## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC, | **CIVIL DIVISION** |
| | **Case Number: GD-23-_____** |
| Plaintiff, | |
| | Type of Pleading: |
| v. | **PRAECIPE FOR WRIT OF SUMMONS** |
| JAMES R. MARSH, | |
| Defendant, | Filed on Behalf of Plaintiff, KATIE M. SHIPP, individually and derivatively on behalf of THE MARSH LAW FIRM PLLC |
| -and- | |
| MARSH LAW FIRM PLLC, | |
| Nominal Defendant. | Counsel of Record for this party: |
| | Beverly A. Block, Esquire |
| | PA ID No. 93406 |
| **NOTICE TO PLEAD** | |
| You are hereby notified to file a written response to the enclosed COMPLAINT IN CIVIL ACTION within twenty (20) days from the date of service hereof or a judgment may be entered against you. | BLOCK & ASSOCIATES, LLC |
| | 6514 Wilkins Avenue |
| | Pittsburgh, PA 15217 |
| | 412-532-8355 (phone) |
| | bblock@blockpgh.com |
| _____ | |
| Beverly A. Block, Esquire | |
| Attorney for Plaintiff, Katie M. Shipp | **JURY TRIAL DEMANDED** |

EXHIBIT 1

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC, | CIVIL DIVISION |
|      Plaintiff, | Case Number: GD-23-_____ |
| v. | |
| JAMES R. MARSH, | |
|      Defendant, | |
|     -and- | |
| MARSH LAW FIRM PLLC, | |
|      Nominal Defendant. | **JURY TRIAL DEMANDED** |

### PRAECIPE FOR WRIT OF SUMMONS

**TO:**   DEPARTMENT OF COURT RECORDS:

Kindly issue a Writ of Summons in Civil Action against the Defendants in this action, James R. Marsh (530 W. 30th Street, Unit 5F New York, NY 10001), and the Marsh Law Firm (31 Hudson Yards, 11th Floor, New York, NY 10001).

Respectfully submitted,

BLOCK & ASSOCIATES, LLC
By: Beverly A. Block, Esquire
Pa. I.D. No. 93406
E-Mail: bblock@blockpgh.com
6514 Wilkins Avenue
Pittsburgh, PA 15217

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC,** | **CIVIL DIVISION** |
| | **Case Number: GD-23-011019** |
|     **Plaintiff,** | **COMPLAINT IN CIVIL ACTION** |
| **v.** | |
| **JAMES R. MARSH,** | **Filed on Behalf of Plaintiff, KATIE M. SHIPP, individually and derivatively on behalf of THE MARSH LAW FIRM PLLC** |
|     **Defendant,** | |
|   -and- | |
| **MARSH LAW FIRM PLLC,** | **Counsel of Record for this party:** |
|     **Nominal Defendant.** | **Beverly A. Block, Esquire**<br>**PA ID No. 93406** |
| **NOTICE TO PLEAD** | **George C. Thompson, Esquire**<br>**PA ID No. 316626** |
| You are hereby notified to file a written response to the enclosed COMPLAINT IN CIVIL ACTION within twenty (20) days from the date of service hereof or a judgment may be entered against you. | **BLOCK & ASSOCIATES, LLC**<br>**6514 Wilkins Avenue**<br>**Pittsburgh, PA 15217**<br>**412-532-8355 (phone)**<br>**bblock@blockpgh.com** |
| Beverly A. Block, Esquire<br>Attorney for Plaintiff, Katie M. Shipp | **JURY TRIAL DEMANDED** |

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC,** | **CIVIL DIVISION** |
| | **Case Number: GD-23-011019** |
| **Plaintiff,** | |
| **v.** | |
| **JAMES R. MARSH,** | |
| **Defendant** | |
| **-and-** | |
| **MARSH LAW FIRM PLLC,** | |
| **Nominal Defendant.** | |

## NOTICE TO DEFEND

     YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT IN CIVIL ACTION AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

     YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

     IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11th Floor Koppers Building, 436 Seventh Avenue
Pittsburgh, Pennsylvania 15219
412-261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC,** | **CIVIL DIVISION** |
| | **Case Number: GD-23-011019** |
|      **Plaintiff,** | |
| **v.** | |
| **JAMES R. MARSH,** | |
|      **Defendant,** | |
| **-and-** | |
| **MARSH LAW FIRM PLLC,** | |
|      **Nominal Defendant.** | |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, individually and in her capacity as a member of the Nominal Defendant, by and through her attorneys, and files the within Complaint in Civil Action (this "Complaint"), and in support thereof, avers the following:

## I.    INTRODUCTION:

1.      This matter involves a dispute between two law partners, James Marsh, and Katie Shipp, the only two members of a limited liability company, The Marsh Law Firm.

2.      As detailed below, Mr. Marsh refuses to provide Ms. Shipp with information to which she is legally entitled in a deliberate attempt to deprive Ms. Shipp of contractually guaranteed information upon her separation from the Firm.

3.      Mr. Marsh's conduct has harmed and continues to harm not only Ms. Shipp, but it also harms and continues to harm the Firm.

1

## II.   PARTIES:

4.     Plaintiff, Katie M. Shipp ("Shipp"), is an adult individual and resident of Allegheny County, Pennsylvania, residing at 1008 Nicole Drive, Bridgeville, PA 15017.

5.     Defendant, James R. Marsh ("Marsh"), is an adult individual and resident of New York, residing at 530 W. 30th Street, Unit 5F New York, NY 10001.

6.     Nominal Defendant, Marsh Law Firm PLLC ("MLF"), is a professional limited liability company, formed in the State of New York, and registered to do business in the Commonwealth of Pennsylvania, with a principal place of business of 31 Hudson Yards, 11th Floor, New York, NY 10001.

7.     MLF has only two members – Marsh, a resident of the state of New York, and Shipp, a resident of the Commonwealth of Pennsylvania.

## III.   JURISDICTION AND VENUE:

8.     The Court of Common Pleas of Allegheny County has subject matter jurisdiction over the claims asserted in the instant lawsuit because during all times relevant to this dispute, MLF maintained an office in Allegheny County, where Shipp and other attorneys and paralegals worked.

9.     The Court of Common Pleas of Allegheny County has personal jurisdiction over the Defendants as MLF is registered to do business in Pennsylvania, at all times relevant to this dispute maintained an office in Allegheny County, Pennsylvania, and Shipp has always practiced as an attorney for MLF in Allegheny County, Pennsylvania.

10.     Venue is proper in the Court of Common Pleas of Allegheny County because Shipp is a resident of Allegheny County, Pennsylvania, she is member of MLF, she is a resident of

Allegheny County, Pennsylvania, MLF maintains or maintained an office in Allegheny County, Pennsylvania, and the facts giving rise to the lawsuit occurred in Allegheny County, Pennsylvania.

## IV.     FACTUAL BACKGROUND:

11.     MLF is a law firm, with offices in New York, New York and Pittsburgh, Pennsylvania.

12.     MLF primarily represents survivors of sexual abuse and discrimination in a variety of jurisdictions.

### A.     Shipp's Employment at MLF:

13.     Shipp is one of two members at MLF.

14.     Shipp began working as an attorney at MLF in 2013, immediately upon her graduation from law school.

15.     Marsh promoted Shipp to member of MLF in October of 2019.

16.     On April 2, 2020, Shipp and Marsh entered into a Partnership Agreement (the "Partnership Agreement")[1], authored by Marsh, to memorialize, *inter alia*, the terms of certain matters relating to the management of MLF, and to "voluntarily associate themselves as general partners for the purpose of engaging in the general practice of law and matters related and incidental to that practice…" (See Partnership Agreement, a true and correct copy of which is attached hereto as **Exhibit A**, at §§ 1.01, 1.03).

17.     Marsh is the other equity member of MLF, and he is also the designated "Managing Partner" of MLF under the Partnership Agreement. (See id., at § 2.01).

---

[1]     While the agreement is designated as a Partnership Agreement, MLF is actually a professional limited liability company, not a partnership, and Shipp and Marsh are designated herein as members of MLF.  While there are continuing references in the Partnership Agreement to Shipp and Marsh as "partners" and to MLF being a "partnership" MLF is not a partnership, and Shipp and Marsh are not partners. They are members.

18.     Beginning in 2021, Marsh demanded that Shipp return several weeks early from her maternity leave to manage MLF's day-to-day operations. Marsh threatened Shipp that if she did not do so, she "may not have a firm to return to."  Marsh failed to provide any type of training or description of his management expectations, and thereafter, Marsh became increasingly unavailable to Shipp as she managed MLF.

19.     Quickly after issuing this directive to Shipp, however, Marsh would not relinquish control over many of MLF's business matters, while simultaneously expecting Shipp to manage the Firm's growing caseload and the oversight of MLF staff.

20.     When Shipp made or attempted to make decisions regarding personnel and other related business matters, Marsh often interfered, undermined, and openly mocked Shipp's decisions and ability to effectively manage the firm.

21.     For instance, to effectively manage MLF's growing caseload, Shipp hired several new attorneys and support staff, and oversaw the opening of MLF's physical office space in Pittsburgh, Pennsylvania; yet, when Shipp tried to manage personnel or implement technology required to carry out the growing business operations, Marsh would inject himself, while demeaning, criticizing, and hamstringing Shipp's efforts.

**B.     Specific Provisions of Shipp and Marsh's Partnership Agreement:**

22.     Section 2.02 of the parties' Partnership Agreement provides that Shipp and Marsh are to split net profit and losses and receive distributions from MLF as follows: 90% to Marsh and 10% to Shipp. (See id., at § 2.02).

23.     By agreement of the parties, the partnership percentages were later amended as follows: 85% to Marsh and 15% to Shipp, and these percentages continue to be the percentages of profit and loss sharing, and distribution sharing for Marsh and Shipp, respectively.

4

24.    Pursuant to Section 2.07 of the Partnership Agreement, Marsh is entitled to "$250,000 each year and [Shipp] shall be entitled to $204,000 each year" as compensation for services in and to the Partnership business. (See id., at § 2.07).

25.    As of June of 2022, Marsh and Shipp each agreed to increase their annual compensation to $401,041.67 to Marsh, and $285,000.00 to Shipp.

26.    Section 2.08 of the Partnership Agreement provides that "[t]he Partners are entitled to the maximum annual allowable contribution to their respective 401(k) retirement accounts which shall be deducted by the Partnership as an ordinary and necessary business expense before determination of net profits." (Id., at § 2.08).

27.    Since Shipp is an MLF employee and a participant in MLF's 401(k) plan (the "Plan"), MLF owes her employer matching contributions, profit sharing contributions, and cash balance plan contributions to the Plan for her benefit for 2023, as required under Section 2.08 of the Partnership Agreement.

28.    Section 3.02 of the Partnership Agreement provides that "no Partner shall incur any obligations in the name or on the credit of the firm exceeding $10,000 without the express written consent of the other Partner.  Any obligation incurred in violation of this provision shall be charged to and collected from the individual Partner incurring the obligation." (Id., at § 3.02).

29.    It is believed and therefore averred that during the term of the Partnership Agreement, Marsh made numerous payments in excess of $10,000 without Shipp's express written consent.

30.    By way of illustrative example, in early to mid-2023, Marsh transferred $700,000.00 from an MLF operating account to one of his personal accounts under the guise that Marsh got a "higher" interest rate in his personal account.

5

**C.**    **MLF Transition to S-Corp. for Tax Purposes:**

31.    Effective January 1, 2022, MLF became an S-corporation for tax purposes only.

32.    As a result of its status as an S-corporation, MLF is required to make pro rata distributions to its members based on each member's percentage interest in the company.

33.    Upon information and belief, each year, in addition to all other distributions made to Marsh as compensation, Marsh also received a distribution from MLF for Marsh's income tax liability related to MLF's profits.

34.    Shipp has not received any distributions from MLF for her term as a member of MLF, from January 1, 2023, to the current date.

35.    Similarly, Shipp has not received any distributions from MLF for Shipp's income tax liability related to MLF's profits for tax year 2022.

**D.**    **Shipp Provides Notice of Resignation:**

36.    Pursuant to Section 4.01 of the Partnership Agreement, "[a]ny Partner may withdraw from the Partnership by giving the Partner(s) 30 days written notice of their intention to do so." (Id., at § 4.01).

37.    On June 7, 2023, Shipp noticed her resignation to Marsh. (See Resignation Letter, a true and correct copy of which is attached hereto as **Exhibit B**).

38.    Accordingly, Shipp intended her resignation from MLF to be effective thirty (30) days later, on July 7, 2023.

39.    Because she was overseeing MLF's day-to-day case management operations at the time of her resignation, immediately upon notice of her resignation, Shipp updated and circulated detailed correspondence and spreadsheets detailing MLF's caseload, fee projections, and staffing and operational matters, and sent same to Marsh.

40.     Specifically, in Shipp's caseload and fee projection spreadsheet, Shipp included financial projections of the anticipated settlement proceeds for each case in which MLF or one of its co-counsel firms was a participant. At or around the time of Shipp's resignation, projected settlement amounts for these cases exceeded $3,000,000.00.

41.     Upon information and belief, Marsh is presently manipulating, or will manipulate, the finances of MLF to improperly reduce payments due to Plaintiff under the Partnership Agreement.

**E.     Shipp's Contractual Entitlement to Documentation:**

42.     Pursuant to Section 2.01 of the Partnership Agreement, "[a]ll Partnership bank statements are required to be provided to any Partner immediately upon request." (Id., at § 2.01).

43.     Additionally, and per Section 2.04 of the Partnership Agreement, Marsh is required to "keep accurate accounting books in which all matters concerning the Partnership…[which] shall be available for examination by any Partner immediately upon request." (Id., at § 2.04).

44.     Similarly, pursuant to Section 2.06 of the Partnership Agreement,

> Upon request of any Partner, a complete accounting of the partnership's affairs as of the close of business on the last day of the previous month shall be delivered within 10 days. Upon such accounting, the net profits of the Partnership shall be distributed to the Partners as provided in this agreement to the extent that cash is available for distribution.

(See id., at § 2.06).

45.     Thus, and pursuant to Sections 2.01, 2.04, and 2.06 of the Partnership Agreement, on June 13, 2023, Shipp requested that Marsh provide her with updated financials and information on MLF's five-year financial projections.

46.     At all times relevant to this dispute, Marsh has met with MLF's outside accountants weekly, each Wednesday to review MLF's financials.

47.     Pursuant to Section 4.03 of the Partnership Agreement, "[u]pon the withdrawal…of a Partner, the Partnership shall pay to the withdrawing…Partner…the Partner's distributive share of any net profits earned by the Partnership on matters currently in existence as evidenced by signed retainer agreements on the date of the Partner's withdrawal…." (See Partnership Agreement, at § 4.03).

48.     Section 4.03 further provides that the "distributive share shall be paid out over time as matters resolve as follows: 100% for the first 12 months, 80% for the second 12 months, 60% for the for the third 12 months, 40% for the fourth 12 months, and 20% for the for the fifth 12 months.  After 60 months, the withdrawing…Partner's interest shall forever terminate." (See id.).

49.     On June 28, 2023, Shipp renewed her June 13, 2023 demand that, per the Partnership Agreement, she be provided with an accounting of MLF's financial records. (See 6/28/23 Email, a true and correct copy of which is attached hereto as **Exhibit C**).

50.     Almost immediately after Shipp sent her email to Marsh on June 28, 2023 – and without any notice – Marsh terminated Shipp's access to all MLF's computer systems even though she was in the process of preparing a thorough exit memorandum containing a summary of all then-current MLF matters.

51.     Marsh then engaged in a pattern of inappropriate conduct, including, *inter alia*, contacting MLF employees, contractors, clients, co-counsel, and vendors to sow dissention and defame Shipp's reputation.

52.     Specifically, Marsh sent emails and text messages to various individuals describing Shipp as "dishonest," "unprofessional," "unaccountable," and "non-transparent."

53.     On July 10, 2023, undersigned counsel, on Shipp's behalf, reiterated Shipp's prior demands for documentation, and requested that Marsh immediately cease and desist from engaging

in the above-referenced activities. (See 7/10/23 Letter, a true and correct copy of which is attached hereto as **Exhibit D**).

54.     Within that correspondence, undersigned counsel also requested – for the third time – detailed accounting information "for all Partnership books and records for 2022 and year-to-date for 2023, as defined in Section 2.04 of the Partnership Agreement, as well as a complete accounting of the partnership's affairs as per Section 2.06 of the [Partnership] Agreement for the same period." (See id.).

55.     Additionally, undersigned counsel requested a copy of the MLF's "federal, state and local income tax or information returns and reports for the three most recent fiscal years (Dec. 31, 2020, Dec. 31, 2021, and Dec. 31, 2022), and [the MLF's] financial statements…for the same periods," requesting that same be provided on or before July 19, 2023.  (See id.).

56.     Per the correspondence on July 10, 2023, undersigned counsel directed Marsh to stop defaming Shipp to third parties and others at MLF, and directed Marsh and MLF "to preserve and not destroy copies of all documents, including all electronically stored information (ESI)…" (See id.)

57.     Despite Shipp's countless demands for MLF's financial data, as required by the Partnership Agreement, MLF and Marsh have failed or otherwise refused to provide Shipp with:

          a.      Copies of all Partnership books and records for 2022 and year-to-date for 2023, as defined in Section 2.04 of the Partnership Agreement.

          b.      Copies of federal, state, and local income tax or information returns and reports for the fiscal years of 2020 and 2021.

          c.      A complete accounting of MLF's affairs as per Section 2.06 of the Partnership Agreement for the same period.

      d.     Information to enable her to calculate her distributive share of MLF's net profits for matters currently in existence and evidenced by retainer agreements.

58.     On July 24, 2023, undersigned counsel contacted Plum Logic, LLC d/b/a Bookkeeper360.com, MLF's outside accounting firm ("Bookkeeper360.com"), and requested that they "preserve all [ESI], documents, and records relevant to potential litigation associated with the financial and tax records" of MLF. (See 7/24/23 Letter, a true and correct copy of which is attached hereto as **Exhibit E**).

59.     Terry Rubenfeld, Bookkeeper360's Chief Operating Officer, immediately confirmed receipt of the aforementioned letter. (See 7/24/23 E-Mail, a true and correct copy of which is attached hereto as **Exhibit F**).

60.     On August 10, 2023, Attorney Lee David Auerbach of Auerbach Law Group, P.C., notified undersigned counsel that he was retained to represent Marsh and MLF.

61.     Throughout the past two months, Shipp, through undersigned counsel, has made countless requests to Mr. Auerbach that he provide all requested information to Shipp per the Partnership Agreement.

62.     Despite many calls and emails to Mr. Auerbach, Marsh and MLF have declined to provide the vast majority of the requested information to Shipp.

63.     The urgency of Shipp's requests for information as provided in the Partnership Agreement is heightened given Marsh's history of putting his personal agenda above those of MLF.

**F.**    **Marsh's Self-Interested Conduct:**

64.    Marsh operated MLF's bank accounts as if they were his own personal accounts by e.g., making many expenditures more than $10,000.00 without Shipp's approval, in violation of Section 3.02 of the Partnership Agreement.

65.    Due to Marsh's history of transferring funds out of MLF, and payments of MLF's funds in excess of $10,000.00 without Shipp's written approval, Shipp requires financial, accounting and tax information from the MLF to ensure that the provisions of the Partnership Agreement are being respected, and payments made in exchange for her membership interest are correct and proper.

66.    Plaintiff brings this action individually against MLF and Marsh as a breach of contract claim under the Partnership Agreement, as well as derivatively on behalf of MLF, in part, to recover funds wrongfully taken, distributed or diverted by and/or to Marsh, and to compel MLF and Marsh to comply with a monthly accounting of MLF to Plaintiff, to ensure that Plaintiff receives the required payments due from MLF (a) as her distributive share of distributions from MLF from January 1, 2023 to July 7, 2023; (b) due to her as a participant of the Plan; and (c) to which she is entitled to receive in exchange for her membership interest in MLF, and to further ensure that all of the required payments under the Partnership Agreement have been properly calculated.

### COUNT I
### Breach of Contract - Specific Performance
### (Plaintiff Individually v. Defendant Marsh)

67.    All previous paragraphs are hereby incorporated by reference.

68.    By executing the Partnership Agreement, Marsh and Shipp agreed that upon a Partner's withdrawal from MLF, Marsh granted Shipp the right to receive, on a timely basis,

detailed bank account, accounting, tax, and other information about her distributive share to which she is contractually entitled.

69.    Marsh's abject failure to honor his obligations under the Partnership Agreement, as set forth above, constitutes material breaches of the Partnership Agreement.

70.    Marsh has failed to comply with the terms of the Partnership Agreement, thereby preventing Shipp from adequately analyzing MLF's financial status, as is her right as a member of MLF, and impeding her from exercising her rights as a member of MLF.

71.    Marsh has failed to comply with the terms of the Partnership Agreement relating the period from January 1, 2023 to July 7, 2023, when Marsh was required to make distributions of MLF's net profits to Shipp, and Marsh failed to provide all required MLF contributions to the Plan for the benefit of Shipp.

72.    Marsh has failed to make distributions to Shipp for her 2022 income tax liability associated with her proportionate share of the net income of MLF, while receiving distributions from MLF for his own income tax obligations.

WHEREFORE, Shipp respectfully requests this Honorable Court enter judgment in its favor, and against Marsh, and award the following relief:

a.    On a monthly basis, order Marsh to execute and deliver to Shipp any and all necessary documents and information requested by her concerning her distributive share of Partnership profits and losses, and the Partnership Agreement, including but not limited to the following:

i.    Copies of bank statements for MLF for January 1, 2022, to August 31, 2023;

ii.        Income statements for MLF for the period of January 1, 2022, to December 31, 2022;

iii.        List of all expense and capital transactions that exceed $10,000.00 that were incurred by MLF in 2022, 2023, and continuing monthly on the 15th of the month following the reporting month, until this dispute is fully and finally resolved by the Court;

iv.        Monthly report of the date and amount of each distribution made to Marsh in 2022, 2023, and for any future periods continuing until this dispute is resolved by this Court, with all future reports provided to Shipp on the 15th day of the month following the calendar month of the report;

v.        Copies of all MLF monthly credit card statements for firm credit cards held by Marsh, or personal credit card statements of Marsh paid by MLF, for 2022, 2023, and for any future periods continuing until this dispute is fully and finally resolved by the Court, with all future reports provided to Shipp on the 15th day of the month following the calendar month of the report.

vi.        Continuing and ongoing provision of MLF's monthly bank statements, income statements, balances sheets, expense and capital transactions, and distributions to Marsh, from September 1, 2023, until this dispute is fully and finally resolved by the Court, provided to Shipp no later than the 15th day after the end of the previous calendar month;

vii.        Beginning from payments received by MLF in January 1, 2022, and continuing until this dispute is fully and finally resolved by the Court, a monthly summary of payments made to MLF and/or any joint or co-counsel, including but not limited to, Pfau Cochran Vertesis and Amala (PCVA), Jennifer Freeman, Robert Lewis, Carol Hepburn, Deb Bianco, Bruce Young, Faraci Lange, and Gina DeCrescenzo in settlement or resolution of claims from each

individual or entity, and detailed information about the date of payment, amount of payment, case identifying information, plaintiff and defendant to whom each payment relates, with ongoing monthly reporting provided no later than the 15th day after the end of the previous calendar month, until this dispute is fully and finally resolved by the Court;

        viii.      Copies of federal and state tax returns for MLF for 2023, including copies of all K-1s for each partner, and continuing for future years until this dispute is fully and finally resolved by the Court; and

        ix.      Other financial information reasonably requested by Shipp to ensure that her rights under the Partnership Agreement are protected.

        b.      Cause MLF to pay Shipp her distributive share of distributions of net profits from MLF for January 1, 2023 to July 7, 2023, as required under Section 2.02 of the Partnership Agreement.

        c.      Cause MLF to pay to the Plan, for the benefit of Shipp as a participant in the Plan, all required company matching contributions, profit sharing contributions and cash balance plan contributions due for the period of Shipp's employment with MLF, from January 1, 2023 to July 7, 2023, as required under Section 2.08 of the Partnership Agreement.

        d.      Such other and further relief as this Honorable Court deems just and appropriate.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (Plaintiff derivatively on behalf of MLF v. Defendant Marsh)

73.     All previous paragraphs are hereby incorporated by reference.

74.     By his actions or inactions above, Defendant Marsh has breached his fiduciary duties owed to MLF, by:

a.      Negligently or intentionally failed to act in good faith and solely for the benefit of MLF in all matters for which he was employed and elected.

b.      Taking, using, or misusing company assets, funds, resources, distributions, and benefits.

c.      Failing to properly account to Plaintiff and failing or refusing to provide to Plaintiff complete information concerning MLF's affairs.

d.      Failing to properly conserve the property of MLF.

e.      Failing to properly protect the interests of Plaintiff in MLF.

f.      Transferring $700,000.00 of MLF's funds to his personal bank account.

g.      Expending funds in excess of $10,000.00 without Shipp's prior written approval.

75.     As a direct and proximate result of Marsh's breach of his fiduciary duties, MLF has sustained and continues to sustain damages and injuries.

76.     Shipp brings this claim derivatively on behalf of MLF in order to obtain a remedy for Marsh's breach of fiduciary duties to MLF.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Marsh and award relief as follows:

a.      Directing Marsh to account fully for any and all payments, assets, resources, distributions, or benefits whatsoever received by him, or anyone through him or on his behalf, from 2022 through the present date;

b.      Directing Marsh to refund and/or repay over to MLF all payments, assets, resources, distributions, or benefits improperly or wrongfully paid him, or paid for his benefit;

c.      Compelling Marsh to surrender any and all company records requested by Shipp, and to fully cooperate in a forensic audit of MLF for the years 2022 through the present date;

d.      Enjoining and precluding Marsh from excluding Shipp from access to any records or accounts of or related to MLF, from using or accessing any financial accounts of MLF, and from making or causing to be made any distributions or disbursements from any of the financial accounts of MLF, without the prior written approval of Shipp;

e.      Entering an award of damages in an amount in excess of the arbitration limits for the assets, funds, resources, distributions, and benefits which Marsh has taken from MLF; and

f.      Enter an award of all expenses, costs, attorneys' fees, punitive damages, and such other and further relief as this Honorable Court deems just and appropriate.

<u>**COUNT III**</u>
<u>**ACCOUNTING**</u>
<u>**(Plaintiff individually and derivatively on behalf of MLF v. Defendant Marsh)**</u>

77.    All previous paragraphs are hereby incorporated by reference.

78.    At all times material and relevant hereto, Marsh controlled MLF's financial matters, including any and all financial accounts, bank accounts, accounting information and federal, state and local tax return information and filings.

79.    Soon after Shipp provided notice of her intent to withdraw from the MLF partnership, Marsh terminated her access to MLF's books, records and papers of the business, which now remain in Marsh's exclusive custody and control.

80.    Plaintiff has made countless demands on Marsh to provide financial information relating to MLF's operations from 2022 through the present date.

81.     Despite repeated demand for the same, Marsh has refused to account for MLF's financial operations.

82.     Marsh is liable to MLF for the value of any monies or property shown by the accounting to have been improperly distributed, wasted, converted, or lost.

83.     As a direct and proximate result of Marsh's breach of his fiduciary duties, MLF has sustained and continue to sustain damages and injuries.

84.     Plaintiff brings this claim, in part, derivatively on behalf of MLF in order to obtain a remedy for Marsh's breach of fiduciary duties to MLF.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Marsh and award relief as follows:

a.      Direct Marsh to fully account for any and all payments, assets, resources, distributions, or benefits whatsoever received by him, or anyone through him or on his behalf, from 2022 through the present date;

b.      Direct Marsh to refund and/or repay over to MLF all payments, assets, resources, distributions, or benefits improperly or wrongfully paid to, diverted to, or received by him, or for his benefit;

c.      Compel Marsh to reimburse MLF from his personal funds for any fees, charges, penalties, liens, fines or other expenses incurred by MLF as a result of or associated with the preparation and/or completion of said accounting including but not limited to accounting fees, legal fees or other expenses;

d.      Compel Marsh to surrender any and all company records requested by Plaintiff and to cooperate fully in a forensic audit of MLF for the years 2022 and continuing until the date this dispute resolved;

e.      Enjoin and preclude Marsh from (i) excluding Shipp from access to any records or accounts of or related to MLF, (ii) using or accessing any financial accounts of MLF; and (iii) making or causing to be made any distributions or disbursements from any of the financial accounts of any of the MLF without approval of Shipp;

f.      Enter an award of damages in an amount in excess of the arbitration limits for the assets, funds, resources, distributions, and benefits which Marsh has taken from MLF; and

g.      Enter an award of expenses, costs, attorneys' fees, punitive damages, and such other and further relief as this Honorable Court deems just and appropriate.

### COUNT IV
### UNJUST ENRICHMENT
### (Plaintiff derivatively on behalf of MLF v. Defendant Marsh)

85.     All previous paragraphs are hereby incorporated by reference.

86.     Marsh has assumed full control over MLF and has taken for himself significant economic benefits accruing from the operation of MLF without compensation to MLF, including, but not limited to, making transferring $700,000.00 of the assets of MLF to his personal account, and making disbursements from MLF's assets in excess of $10,000.00 without Shipp's written approval.

87.     Marsh knew or should have known that MLF would be harmed by taking for himself benefits accruing from the operation of MLF and the unlawful refusal to return such benefits to MLF without providing adequate compensation therefore.

88.     As a result of improperly diverting MLF funds for his benefit, Marsh has been unjustly enriched.

89.     MLF is entitled to just compensation for the reasonable value of the foregoing benefits taken by Marsh.

90.     As a direct and proximate result of Marsh's taking of the foregoing benefits without adequate compensation, MLF has sustained and continues to sustain damages and injuries.

91.     Shipp brings this claim derivatively on behalf of MLF in order to obtain a remedy for Marsh's unjust enrichment at the expense of and to the detriment of MLF.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Marsh and award relief as follows:

a.      Direct Marsh to account fully for any and all payments, assets, resources, distributions, or benefits whatsoever received by him, or anyone through him or on his behalf, from 2022 through the date that this dispute is resolved;

b.      Enter an award of damages in an amount in excess of the arbitration limits for the assets, funds, resources, distributions, and benefits which Marsh has improperly taken from MLF; and

c.      Enter an award of expenses, costs, attorneys' fees, punitive damages and such other relief as the Court may deem just.

### COUNT V
### APPOINTMENT OF A CUSTODIAN
### (Plaintiff derivatively on behalf of MLF v. All Defendants)

92.     All previous paragraphs are hereby incorporated by reference.

93.     Plaintiff believes and therefore avers that Defendant Marsh has acted oppressively, and/or fraudulently toward MLF.

94.     Shipp further believes and therefore avers that Marsh has misapplied and/or wasted the assets of MLF.

95.     As a direct and proximate result of Marsh's illegal, oppressive and/or fraudulent actions, MLF has sustained and continue to sustain damages.

96.     As a direct and proximate result of Marsh's waste and misapplication of the assets of the company, MLF has sustained and continues to sustain damages.

97.     Despite repeated demands, however, Marsh has refused to cooperate with a necessary and appropriate investigation into the accounts of MLF.

98.     Marsh has refused to provide necessary information to conduct a necessary and appropriate investigation into MLF's accounts.

99.     MLF's members, namely, Shipp and Marsh, are plainly deadlocked in the management of the business and affairs of MLF, such that that Shipp believes it is necessary and appropriate to conduct an examination of, and investigation into MLF's accounts and Marsh refuses to cooperate with such examination and investigation.

100.    No mechanism exists for breaking the deadlock on these issues.

101.    The appointment of a custodian is necessary to prevent irreparable harm to MLF and its members.

102.    The appointment of a custodian is necessary to terminate Marsh's oppressive, and fraudulent conduct toward MLF.

103.    MLF's assets are in danger of depletion due to the continued misapplication and waste of the MLF's assets, funds, resources, and benefits.

104.    The appointment of a custodian is necessary to take charge of MLF's assets and business to prevent further waste and dissipation of MLF's interests.

105.    The appointment of a custodian is necessary to resolve the deadlock in MLF's management of its business affairs.

106.    If a custodian is not appointed to take charge of MLF's assets and business affairs, MLF will suffer irreparable injury.

WHEREFORE, Plaintiff respectfully requests that the Court:

      a.      Appoint a custodian for MLF;

      b.      Grant the custodian all necessary powers to break the deadlock of MLF's members, to take charge of MLF's assets and business, to prevent the further waste and dissipation of the company's interests, and to terminate the oppressive, and fraudulent conduct toward MLF;

      c.      Grant the custodian all necessary powers to determine whether to pursue any litigation on behalf of MLF, which the custodian may determine to be necessary or advantageous to MFL;

      d.      Remove Marsh as an officer, manager, and Managing Member of MLF; and

      e.      Enter an order containing any other such and further relief as this Honorable Court deems just and appropriate.

                  Respectfully submitted,

                  Block & Associates, LLC

                  Beverly A. Block, Esquire
                  Pa. I.D. No. 93406
                  6514 Wilkins Avenue
                  Pittsburgh, PA  15217
                  (412) 532-8355 (main)
                  bblock@blockpgh.com

## VERIFICATION

The below signer verifies that the within Complaint is based upon information furnished to counsel. The language of the Complaint is that of counsel and not necessarily that of the signer. Signer verifies that she has read the Complaint and that the information contained therein is true and correct to the best of her knowledge, information, and belief. To the extent that the language of the Complaint is that of counsel, signer has relied upon counsel in making this Verification. This Verification is made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

Date: 10/19/2023                    By: _Katie M. Shipp_
                                          Katie M. Shipp

EXHIBIT A

# MARSH LAW FIRM PLLC
## Partnership Agreement

James R. Marsh and Katie M. Shipp, hereinafter referred to as "Partners," agree that:

## ARTICLE 1. NATURE OF PARTNERSHIP

**1.01 Partnership Purpose.** The Partners voluntarily associate themselves as general partners for the purpose of engaging in the general practice of law and matters related and incidental to that practice under the laws of the State of New York

**1.02 Name of Partnership.** The name of the Partnership shall be Marsh Law Firm PLLC.

1.03 Term of Partnership.  The Partnership commenced on January 1, 2019 and shall continue until dissolved by mutual agreement of the parties or terminated as provided in this Agreement. This Partnership Agreement supersedes and replaces all prior partnership agreements concerning the Marsh Law Firm PLLC.

**1.04. Place of Business.** The Partnership offices shall be located at 151 E. Post Road Suite 102**,** White Plains, N**ew York** 10601 and any other place or places in New York that may be designated by majority vote of the Partners.

## ARTICLE 2. PARTNERSHIP FINANCES

**2.01 Deposit and Withdrawal of Funds.** All Partnership funds shall be deposited in a Partnership bank account established at JPMorgan Chase Bank. The Partners hereby designate James R. Marsh to be the Managing Partner who shall be authorized to sign checks and make withdrawals and transfers from such bank accounts. All partnership bank statements shall be made available to any Partner immediately upon request.

**2.02 Profits and Losses.** Any ordinary and necessary expenses incidental to the Partnership business shall be paid out of the Partnership operating account. Any net profits or losses that may accrue to the Partnership shall be distributed to or borne by the Partners in the following proportions: James R. Marsh, 90%, Katie M. Shipp, 10%.

**2.04 Partnership Books.** At all times during the continuation of the Partnership, the Managing Partner shall keep accurate accounting books in which all matters concerning the Partnership, including all of its income, expenditures, assets, and liabilities, shall be entered. These books shall be kept on a cash basis and shall be available for examination by any Partner immediately upon request.

**2.05 Fiscal Year.** The fiscal year of the Partnership shall end on the 31st day of December.

**2.06 Accountings.** Upon request of any Partner, a complete accounting of the partnership's affairs as of the close of business on the last day of the previous month shall be delivered within 10 days. Upon such accounting, the net profits of the Partnership shall be distributed to the Partners as provided in this

EXHIBIT A

agreement to the extent that cash is available for distribution. Except as to material errors discovered within 30 days after issuance, each accounting shall be final and conclusive to each Partner.

**2.07 Salaries.** As compensation for his or her services in and to the Partnership business, James R. Marsh shall be entitled to $250,000 each year and Katie M. Shipp shall be entitled to $204,000 each year, which shall be deducted by the Partnership as an ordinary and necessary business expense before determination of net profits. The salary of any Partner may be adjusted at any time by mutual agreement of all the partners.

**2.08 Retirement Contribution.** The Partners are entitled to the maximum annual allowable contribution to their respective 401(k) retirement accounts which shall be deducted by the Partnership as an ordinary and necessary business expense before determination of net profits. The retirement contribution to any Partner may be adjusted at any time by mutual agreement of all the Partners.

**2.09 Net Profits Defined.** The term "net profits" as used in this Agreement shall mean the net profits of the Partnership as determined by generally accepted accounting principles for each accounting period provided for in this Agreement.

**2.10. Reserves.** The Partnership shall maintain a reserve of one year's expenses in cash or a line of credit or a combination of the two.

**2.11 Designated Partnership Representative.** James R. Marsh is the Designated Partnership Representative for all tax matters concerning the Partnership. All available partnership tax returns shall be made available to any partner immediately upon request.

## ARTICLE 3. RIGHTS AND DUTIES OF PARTNERS

**3.01 Time Devoted to Partnership.** Each Partner shall devote his or her undivided time and attention and use the utmost of his or her skills and ability in furtherance of the Partnership business.

**3.02 Management and Authority.** Each Partner shall have an equal voice in the management of the Partnership and shall have the authority to bind the Partnership in making contracts and incurring obligations in the name and on the credit of the Partnership. However, no Partner shall incur any obligations in the name or on the credit of the firm exceeding $10,000 without the express written consent of the other Partner. Any obligation incurred in violation of this provision shall be charged to and collected from the individual Partner incurring the obligation.

## ARTICLE 4. WITHDRAWAL, INVOLUNTARY DISCHARGE, DEATH OR DISSOLUTION

**4.01 Withdrawal of Partner.** Any Partner may withdraw from the Partnership by giving the Partner(s) 30 days written notice of their intention to do so.

**4.02 Withdrawal, Discharge, or Death of a Partner.** Upon the withdrawal, involuntary discharge, or death of a Partner, the remaining Partner(s) may continue the Partnership business or transfer matters currently in existence as evidenced by signed retainer agreements on the date of the Partner's

EXHIBIT A

withdrawal, involuntary discharge, or death, subject to the following terms and conditions which shall be binding on any subsequent transferees to the extent permitted by New York Law and attorney ethics. The remaining Partner(s) or transferees shall pay to the withdrawing or involuntarily discharged Partner, or the deceased Partner's Personal Representative or Distributee listed in Appendix I, as provided in paragraph 4.03 of this Agreement.

**4.03 Value of Partnership Interest.** Upon the withdrawal, involuntary discharge, or death of a Partner, the Partnership shall pay to the withdrawing or involuntarily discharged Partner, or the deceased Partner's Personal Representative or Distributee, the Partner's distributive share of any net profits earned by the Partnership on matters currently in existence as evidenced by signed retainer agreements on the date of the Partner's withdrawal, involuntary discharge, or death. The distributive share shall be paid out over time as matters resolve as follows: 100% for the first 12 months, 80% for the second 12 months, 60% for the third 12 months, 40% for the fourth 12 months, and 20% for the fifth 12 months. After 60 months, the withdrawing, involuntarily discharged, or deceased Partner's interest shall forever terminate.

**4.04 Dissolution.** Upon dissolution of the Partnership, all Partnership assets, but excluding any files or records pertaining to the affairs of its clients, shall be liquidated and the proceeds distributed in the manner specified under New York law.

## ARTICLE 5. MISCELLANEOUS

**5.01 Additional Partners.** The Partners may by unanimous vote admit additional Partners and fix the capital contributions, if any, to be made and the participation percentage in profits and losses of any additional Partners. Before being admitted, each additional Partner must first agree in writing to be bound by the provisions of this Agreement.

**5.02 Notices.** Any notices permitted or required by law or by this Agreement shall be in writing and shall be deemed duly given when personally delivered to the Partner to whom they are addressed or when deposited in the United States mail, first-class postage prepaid, certified, addressed to that Partner at the address that appears below that Partner's signature at the end of this Agreement or when delivered by email to the email address that appears below that Partner's signature at the end of this agreement.

**5.03 Amendments.** No amendment to this Agreement shall be valid unless made in writing and signed by all the Partners.

**5.06 New York Law Controls.** Any requirements which are not included in this Agreement shall be controlled and determined by appliable New York Law.

EXHIBIT A

Executed on April 2, 2020 in White Plains, Westchester County, New York.

_____
James R. Marsh
151 East Post Road, Suite 102
White Plains, NY 10601
jamesmarsh@marsh.law


Executed on April 2, 2020 in Carnegie, Allegheny County, Pennsylvania.

_____
Katie M. Shipp
510 Washington Road
Carnegie, PA 15106
katieshipp@marsh.law

EXHIBIT A

APPENDIX 1
Partner's Distributees Pursuant to Section 4.02 and 4.03

**James R. Marsh hereby designates the following Distributee(s)**

Sara E. Marsh born May 3, 1996 or her issue per stirpes 25% interest
Jonah B. Marsh born May 30, 1999 or his issue per stirpes 25% interest
Daniel A. Marsh born October 28, 2004 or his issue per stirpes 25% interest
Lily I. Perry born December 13, 2002 or her issue per stirpes 25% interest

Executed on April 2, 2020 in White Plains, Westchester County, New York.

James R. Marsh
151 East Post Road, Suite 102
White Plains, NY 10601
jamesmarsh@marsh.law

**Katie M. Shipp hereby designates the following Distributee(s)**

Andrew T. Shipp born June 12, 1987 or his issue per stirpes 100% interest

Executed on April 2, 2020 in Carnegie, Allegheny County, Pennsylvania.

Katie M. Shipp
510 Washington Road
Carnegie, PA 15106
katieshipp@marsh.law

EXHIBIT B

**From:** James R. Marsh <jamesmarsh@marsh.law>
**Date:** Thursday, June 8, 2023 at 11:27 PM
**To:** Katie M. Shipp <katieshipp@marsh.law>
**Subject:** RE: Notice

Thank you Katie for all your years of dedication to our clients and our firm. You have been such an instrumental part of everything we've done over the past DECADE. I will miss you greatly.

James

**James R. Marsh**
Marsh Law Firm PLLC

_____

**Direct:** 929-232-3235
**Main:** 212-372-3030
**Web:** www.marsh.law
**Email:** jamesmarsh@marsh.law
31 Hudson Yards, 11th Floor, New York, NY 10001

EXHIBIT B

AAJ
LEADERS FOR
PATRON • 2023

**From:** Katie M. Shipp <katieshipp@marsh.law>
**Sent:** Thursday, June 8, 2023 10:01 AM
**To:** James R. Marsh <jamesmarsh@marsh.law>
**Subject:** Re: Notice

James,

Please also let this serve as my formal resignation from the Children's Justice Fund as a board member.

Sincerely,

*Katie M. Shipp, Esq.*
Managing Partner



Office: (212)-372-3030
Direct: (929)-232-3181
KatieShipp@marsh.law

---

**From:** Katie M. Shipp <katieshipp@marsh.law>
**Date:** Wednesday, June 7, 2023 at 2:53 PM
**To:** James R. Marsh <jamesmarsh@marsh.law>
**Subject:** Notice

James,

I am so proud of what we have accomplished and built together over the last 11 years. I am incredibly grateful for the opportunity to join the firm, move up to partner, and eventually to managing partner. I have learned and grown so much professionally and personally from you and the firm as a whole. I believe fully in the team we have built- watching each team member grow into their roles has been so meaningful. I know that they will continue to blossom under your leadership.

You have taught me so much throughout the years and I am so thankful for that- it's hard to put it in words. There were times that my family needed to take priority due to medical issues and you always gave me the time and grace to do that. I know I would not have had that ability anywhere else- you allowed me to pursue my career goals while also caring for those I love. This was truly a gift- thank you. You taught me the power of advocacy, how to be a voice for those who have been left voiceless, and how to continue the fight even when the deck is stacked against me. I will take that with me in wherever life takes me next.

I remain dedicated to this fight- though, going forward, it will be in a different capacity. I cherish the memories  we have made and sincerely hope we can work together again in the future. I know there is so much more to do and that I want to be a part of it in some way.

EXHIBIT B

I want to thank you for being so understanding when I shared my decision with you today. Even though I know this is the right decision for me and my family, it has been difficult and emotional to accept. I appreciate you supporting me (like you have done in the past so many times).

As I shared with you on the phone today, this will serve as my 30 day notice of my withdrawal as partner at Marsh Law Firm. My last day with the firm will be July 7, 2023. I look forward to working on the transition with you and know we can make it positive for all involved.

Sincerely,

*Katie M. Shipp, Esq.*
Managing Partner



Office: (212)-372-3030
Direct: (929)-232-3181
KatieShipp@marsh.law

---

**CONFIDENTIALITY NOTICE:** The information contained in this message and any attachment is confidential and may be subject to the attorney-client privilege, or otherwise protected from disclosure by applicable law. Any disclosure, distribution, copying, or use of the information contained in this message or any attachment by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system.

**IF YOU ARE NOT A CLIENT:** *This material is general information of an educational nature and is not legal advice. This communication does not establish or constitute the retention of Marsh Law Firm PLLC for the provision of legal services, unless explicitly so stated herein. Any attached items, including the content of this e-mail, are offered "as is" with no guarantee as to their accuracy, timeliness, or completeness.*

EXHIBIT C

**From:** Katie Shipp <katiemshipp@gmail.com>
**Sent:** Wednesday, June 28, 2023 12:24 PM
**To:** jamesmarsh@marsh.law
**Cc:** jenniferfreeman@marsh.law
**Subject:** Termination of Partnership

Dear James,

Per our Partnership Agreement ("Agreement"), and as you are aware, I provided the firm with 30-days' advanced written notice of my intent to withdraw from our partnership. Pursuant to that notice, my last day of employment at Marsh Law Firm (the "Firm") was planned to ~~be July 7,~~ 2023.

From the ~~various~~ correspondences that I have received from you, coupled with emails you have cc'd me on with others, and based on my having been shut out of various Firm systems, it seems as though you would like to expedite my departure from the Firm to make it effective immediately. If that is your desire, please let me know upon your receipt of this correspondence. I will agree to an earlier departure date, acknowledging that I have provided the requisite notice under the Agreement.

Upon a partner's withdrawal from the Firm, pursuant to Section 4.03 of the Agreement, the Firm is required to pay the departing partner, "the Partner's distributive share of any net profits earned by the Partnership on matters currently in existence as evidence by signed retainer agreements" as of July 7, 2023 (the "Distributive Share"). According to the Agreement, the Distributive Share shall be paid, as follows: "100% for the first 12 months, 80% for the second 12 months, 60% for the third 12 months, 40% for the fourth 12 months, and 20% for the fifth ~~12 months." My me~~mbership interest in the Firm terminates only after the expiration of this 60-month period.

To effectuate each payout of the Distributive Share, Section 2.06 of the Agreement would require the Firm to provide me with a complete monthly accounting upon demand, within ten (10) days of my request for same. In the spirit of compromise, I am willing to waive this accounting requirement and devise an alternative arrangement to hasten a less cumbersome break. As such, I am making the following proposal:

1. The Firm pays Katie M. Shipp ("Shipp") the amount of $3,250,000, in full and complete settlement of the amounts due to her under Section 4.03 of the Partnership Agreement, pursuant to a note that bears the following terms:

   a. $500,000 paid on or before August 31, 2023;
   b. $250,000 paid on or before December 31, 2023;
   c. $500,000 paid on or before June 30, 2024;
   d. $750,000 paid on or before December 31, 2024;
   e. $500,000 paid on or before June 30, 2025; and
   f. $750,000 paid on or before December 31, 2025.

   Interest will be paid on the outstanding unpaid balance based on the July 2023 semi-annual AFR rate (4.74%). There will not be a prepayment penalty. The note will be secured by my ownership interest in the Firm and personal guaranties. I will arrange for the preparation of the Note, at my exclusive cost.

EXHIBIT C

2. Payment by the Firm of the full amount of the Firm's portion of the 401(k) and cash-balance plan contribution for 2022, and the pro rata portion due for January 1, 2023 to July 7, 2023.

3. Execution of a mutual settlement and release agreement, releasing all claims between Shipp, James Marsh, individually, Jennifer Freeman, and the Firm, which will include a mutual non-disparagement provision, and an agreed-upon statement that we will release to clients, vendors, partners, co-counsel, etc. about Shipp's exit from the Firm.

4. Filing a change of registered address for Marsh Law Firm PLLC with the Pennsylvania Department of State, to remove my home address as the registered address of Marsh Law Firm PLLC in Pennsylvania.

5. Filing of all required annual registration statements due with the Pennsylvania Department of State for Marsh Law Firm PLLC; and

6. Satisfaction of all liens relating to the two UCC financing statements on file with Pennsylvania Department of State with Marsh Law Firm PLLC as the debtor.

Please know that this email is sent with the sincere hope that we can work together towards an amicable split of our 12-year relationship. As you know, we have built an incredibly successful Firm together, and I am hopeful that we can carry out this exit productively, such that the Firm can continue to operate and serve our very deserving clients. In the meantime, I respectfully ask that you immediately discontinue the use of language in your written correspondence with others that seems intended to impugn my reputation. I do not see how any of that is helpful in connection with this matter.

I will make myself available to discuss these terms at your convenience. Please provide a response to my proposal by July 3, 2023.


Sincerely,


Katie M. Shipp

EXHIBIT D



July 10, 2023

**_VIA EMAIL and CERTIFIED MAIL_**
**_RETURN RECEIPT REQUESTED_**
Mr. James Marsh, Esquire
Partner at Marsh Law Firm PLLC
Equinox Building
31 Hudson Yards, 11th Floor
New York, NY 10001

                In re:         **_Katie M. Shipp_**

Dear Mr. Marsh:

        Please be advised that this firm represents Katie M. Shipp in connection with the matters set forth herein.  Please direct any further correspondence on these matters to my attention.

        The purpose of this correspondence is two-fold.  <u>First</u>, it has come to Ms. Shipp's attention that since Ms. Shipp provided you with contractually required notice of her intent to withdraw from the partnership at the Marsh Law Firm ("Firm") on June 7, 2023, you have engaged in a pattern of inappropriate conduct, including, *inter alia*, contacting others to sow dissention and to defame Ms. Shipp's reputation amongst both the employees and contractors of the Firm, as well as the Firm's co-counsel, clients, and vendors. You have repeatedly sent e-mails and text messages to countless individuals describing Ms. Shipp as, among other things, "dishonest," "unprofessional," "unaccountable," and "non-transparent." Based on your 12 years of experience working with Ms. Shipp to build the Firm, and your daily reliance on her expertise and professionalism, you are well aware that the information you are sharing with these individuals is patently false. **<u>Ms. Shipp therefore demands that you, on behalf of yourself and the Firm, immediately cease and desist from engaging in the above-referenced activities.</u>**

        <u>Second</u>, given the aforementioned conduct, you and the Firm are hereby directed to preserve and not destroy copies of all documents, including all electronically stored information (ESI) such as emails and text messages, as described above, including, without limitation, information sent via e-mail and Microsoft Teams. To the extent that you have any of that ESI-related information set to automatically delete, you must hereby discontinue any such automatic deletion of such information.

        Furthermore, and pursuant to Ms. Shipp's rights under her Partnership Agreement with the Firm dated April 2, 2020 ("Agreement"), and the New York Limited Liability Company Law, Ms. Shipp hereby makes a formal request for all Partnership books and records for 2022 and year-to-date for 2023, as defined in Section 2.04 of the Agreement, as well as a complete accounting of the partnership's affairs as per Section 2.06 of the Agreement for the same period. She also requests

EXHIBIT D

James Marsh, Esq.
July 10, 2023
Page 2

a copy of the Firm's federal, state and local income tax or information returns and reports for the three most recent fiscal years (Dec. 31, 2020, Dec. 31, 2021, and Dec. 31, 2022), and the Firm's financial statements (income statement and balance sheet) for the same periods. This information must be provided to our firm's attention on or before July 19, 2023.

Further, Ms. Shipp awaits the required COBRA notice and a letter on Marsh Law Firm letterhead stating that she is no longer employed with the firm. Given that her final day was July 7, 2023, we anticipate receiving this notice and letter prior to August 4, 2023.

It is not Ms. Shipp's desire that this matter evolve into a drawn-out dispute involving litigation. To the contrary, it is Ms. Shipp's sincere hope that we will be able to resolve this matter amicably and promptly. It is my understanding that Ms. Shipp attempted to resolve this matter with you directly in June, without first retaining legal counsel, but that she has not heard back from you or anyone else at the Firm about the payout of her Distributive Share. Be advised that Ms. Shipp expressly reserves all legal and equitable rights and remedies in connection with this matter, including the right to seek injunctive relief and recover monetary damages.

Sincerely yours,

**BLOCK & ASSOCIATES, LLC**
By: Beverly A. Block

Cc:    Jennifer Freeman, Esquire (Via E-Mail to: jenniferfreeman@marsh.law)

EXHIBIT E



July 24, 2023

***Via Email***
Plum Logic, LLC d/b/a Bookkeeper360.com
c/o: Brandon Cooperman (bcooperman@bookkeeper360.com)
c/o: Terry Rubenfeld (trubenfeld@bookkeeper360.com)

>   **Re:   Preservation Obligations for Electronically Stored Information, Records and Documents Regarding Marsh Law Firm, PLLC**

Dear Mr. Rubenfeld and Mr. Cooperman:

This firm represents Katie M. Shipp, a prior member seeking redemption of her membership interest in Marsh Law Firm, PLLC (the "Company"). I am writing to request that Plum Logic, LLC d/b/a Bookkeeper360.com and its affiliated entities (collectively "Bookkeeper360.com") preserve all electronically stored information ("ESI"), documents, and records relevant to potential litigation associated with the financial and tax records of the Company.

To that end, it is of critical importance that you comply with the instructions below. Please note that you may be called to give testimony about your preservation efforts. It is requested that Bookeeper360.com not destroy or delete evidence that may be relevant to an adversary or support claims or defenses in litigation.

**Custodians of Documents, Records, ESI, and Other Relevant Materials:**

At this point in time, we have identified both of you as individuals at Bookkeepers360.com who are likely custodians of relevant ESI, hard-copy documents, and records relevant to this matter, and we therefore direct the preservation of all corporate information related to the potential litigation that are within your possession or control until further notice. This list of documents below, as well as the identity of ESI custodians, may be revised and/or supplemented as Ms. Shipp's investigation into this matter continues.

Please also note that Bookkeeper360.com's preservation obligations extend beyond ESI in the care, possession, or custody of these entities, and includes ESI in the custody of others that are subject to Bookkeeper360.com's direction or control. Accordingly, please notify any of your current or former agent(s), attorney(s), employee(s), custodian(s), or contractor(s) in possession of potentially relevant ESI and documents to preserve such information to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

EXHIBIT E

Plum Logic, LLC d/b/a Bookkeeper360.com's – Litigation Hold
July 24, 2023
Page 2

**Types of ESI, Records and Documents That Must be Retained:**

Bookkeeper360.com should retain all ESI, records and documents (electronic or paper) in its possession that may have any connection to the Company, including, but not limited to:

- Financial statements (income statements, financial projections, and balance sheets) and all accounting records for the Company, for the calendar years 2020, 2021, 2022, and 2023;

- All tax returns of the Company, including, but not limited to Forms 1065, Forms 1120-S, PA-1120S, Forms 941, Forms 940, Forms 1099-MISC, and Forms W-2 for the calendar years 2020, 2021, 2022, and 2023; and

- Workpapers, notes, documents, and correspondence regarding any of the above-referenced matters.

**Form of ESI, Records and Documents that Must be Maintained:**

Bookkeeper360.com must maintain both hard copies of ESI, records, and documents as well as all e-mail and other ESI.  Electronic information includes: word processing documents, spreadsheets, databases, calendars, networks, computer systems (including legacy systems), servers, archives, backup and disaster recovery systems, tapes, disks, drives, cartridges, other storage media, laptops, internet records, personal computers, and other information storage devices.  Bookkeeper360.com must retain all copies it has on any storage medium, and cannot overlook sources of data such as portable hard drives, memory cards, "thumb drives," personal digital assistants, mobile telephones, and smartphones.

If custodians of the above-referenced documents use a home computer to perform work on behalf of Bookkeeper360.com, you should also preserve any relevant information from those source(s) as well.

The terms "documents" includes handwritten notes, drafts, tabulations, calculations, summaries, and work papers; it is not limited only to "formal" or "final" documents.  Examples of documents (whether in electronic or hard copy) that should be retained include, but are not limited to, letters, correspondence, memoranda, reports, tabulations, calculations, invoices, external and internal literature, notes, schedules, worksheets, plans, minutes, bulletins, brochures, catalogs, notices, press releases, transcripts, calendars, diaries, charts, forecasts, and drafts of all such documents that mention or relate to the above-described litigation.  This list is not exhaustive; it is provided by way of example only, and all documents relating in any way to the topics discussed in this memorandum must be preserved.

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions.  If information exists in both electronic and paper forms, you must preserve both forms.

EXHIBIT E

Plum Logic, LLC d/b/a Bookkeeper360.com's – Litigation Hold
July 24, 2023
Page 3

## Suspension of Destruction Policies and Automated Deletion Systems.

You are also requested to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;

- Using data or media wiping, disposal, erasure or encryption utilities or devices;

- Overwriting, erasing, destroying or discarding back up media;

- Re-assigning, re-imaging or disposing of systems, servers, devices or media;

- Running antivirus or other programs effecting wholesale metadata alteration;

- Releasing or purging online storage repositories;

- Using metadata stripper utilities;

- Disabling server or IM logging; and,

- Executing drive or file defragmentation or compression programs.

Kindly confirm your receipt of this letter and further confirm that you have taken the steps outlined in this letter.  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.  If you have any questions related to this matter or the directives contained herein, please do not hesitate to contact me directly.

Yours very truly,

BLOCK & ASSOCIATES, LLC
By:  Beverly A. Block, Esq.

cc:    James Marsh, Esquire (via Email)

EXHIBIT F

**From:** Terry Rubenfeld <trubenfeld@bookkeeper360.com>
**Sent:** Monday, July 24, 2023 2:58 PM
**To:** Beverly Block <bblock@blockpgh.com>
**Cc:** bcooperman@bookkeeper360.com; jamesmarsh@marsh.law
**Subject:** Re: Litigation Hold Correspondence 7.24.23

To Beverly Block

Confirmed receipt of document and request

Terry

On Mon, Jul 24, 2023 at 10:31 AM Beverly Block <bblock@blockpgh.com> wrote:

Dear Mr. Rubenfeld and Mr. Cooperman:

EXHIBIT F

Please see the attached letter for your immediate attention. Please contact me with any questions.


Very truly yours,


Beverly A. Block, Esquire

Block & Associates, LLC

6514 Wilkins Avenue

Pittsburgh, PA 15217

Office: (412) 532-8355

Mobile: (412) 527-5858

Email: bblock@blockpgh.com

Visit us: www.blockpgh.com



**CONFIDENTIALITY:** This e-mail (and any attachments) may contain confidential and privileged material for the sole use of the intended recipient. Any review or distribution by others, without express permission, is strictly prohibited. If you are not the intended recipient please contact the sender and delete all copies.

**GO GREEN:** Kindly print this email only if necessary. Thank you for helping Block & Associates, LLC be environmentally responsible.



--



**Terry Rubenfeld, CPA**
Chief Operating Officer
(631) 807-5161

EXHIBIT F

bookkeeper360.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the within **Complaint** has been electronically filed with the Court and served upon the following this 19th day of October via E-mail and/or by United States Certified Mail, Return Receipt, postage prepaid to the following:

James Marsh
530 W. 30th Street, Unit 5F
New York, NY 10001

The Marsh Law Firm PLLC
31 Hudson Yards, 11th Floor
New York, NY 10001

Beverly A. Block, Esquire
Pa I.D. No. 93406

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Beverly A. Block, Esquire

Signature: 

Name: Beverly A. Block, Esquire

Attorney No. (if applicable): 93406

THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC, | CIVIL DIVISION |
| | Case Number: GD-23-011019 |
| Plaintiff, | **MOTION TO ASSIGN CASE TO THE COMMERCE AND COMPLEX LITIGATION CENTER** |
| v. | |
| JAMES R. MARSH, | Filed on Behalf of Plaintiff, KATIE M. SHIPP, individually and derivatively on behalf of THE MARSH LAW FIRM PLLC |
| Defendant, | |
| -and- | |
| MARSH LAW FIRM PLLC, | Counsel of Record for this party: |
| Nominal Defendant. | Beverly A. Block, Esquire<br>PA ID No. 93406 |
| | George C. Thompson, Esquire<br>PA ID No. 316626 |
| | BLOCK & ASSOCIATES, LLC<br>6514 Wilkins Avenue<br>Pittsburgh, PA 15217<br>412-532-8355 (phone)<br>bblock@blockpgh.com |
| | JURY TRIAL DEMANDED |

THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC, | CIVIL DIVISION<br><br>Case Number: GD-23-011019 |
| Plaintiff, | |
| v. | |
| JAMES R. MARSH, | |
| Defendant | |
| -and- | |
| MARSH LAW FIRM PLLC, | |
| Nominal Defendant. | |

## NOTICE OF PRESENTATION

| | |
|---|---|
| The Marsh Law Firm | James R. Marsh |
| 31 Hudson Yards, 11th Floor | 530 W. 30th Street, Unit 5F |
| New York, NY 10001-2170 | New York, NY 10001 |

PLEASE TAKE NOTICE that the within Motion to Assign Case to the Commerce and Complex Litigation Center for Plaintiff, Katie M. Shipp, will be presented to the Honorable Christine A. Ward, Civil Division Administrative Judge of the Court of Common Pleas of Allegheny County, Pennsylvania, on November 3, 2023, at 9:30 a.m. in Courtroom 819 of the City-County Building, 414 Grant Street, Pittsburgh, PA 15219, or as soon thereafter as pleases the Court.

Dated:  October 24, 2023

Respectfully submitted,

BLOCK & ASSOCIATES, LLC

Beverly A. Block, Esquire
Pa ID No. 93406
bblock@blockpgh.com

1

THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC, | CIVIL DIVISION<br><br>Case Number: GD-23-011019 |
|       Plaintiff, | |
| v. | |
| JAMES R. MARSH, | |
|       Defendant | |
|    -and- | |
| MARSH LAW FIRM PLLC, | |
|       Nominal Defendant. | |

## MOTION TO ASSIGN CASE TO THE
## COMMERCE AND COMPLEX LITIGATION CENTER

AND NOW COMES Plaintiff, Katie M. Shipp, individually and in her capacity as a member of the Nominal Defendant, by and through her attorneys, and files the within Motion to Assign Case to the Commerce and Complex Litigation Center (this "Motion to Assign"), and in support thereof, states as follows:

**I.**    **INTRODUCTION:**

1.    This matter involves a dispute between two law partners, James Marsh ("Marsh"), and Katie Shipp ("Shipp"), the only two members of a limited liability company, The Marsh Law Firm ("MLF").

2.    Marsh refuses to provide Shipp with information to which she is legally entitled in a deliberate attempt to deprive Shipp of contractually guaranteed information upon her separation from MLF.

1

3.      Marsh's conduct has harmed and continues to harm not only Shipp, but it also harms and continues to harm MLF.

4.      Shipp filed suit against Marsh and MLF through the filing of a Writ of Summons on September 21, 2023, and thereafter filed the Complaint in this action on October 19, 2023.

5.      The Complaint sets forth claims for breach of contract, unjust enrichment, and breach of fiduciary duty, and seeks an accounting, and the appointment of a custodian to manage the operation of MLF. A true and correct copy of the Complaint is attached as **Exhibit A** and is incorporated by reference as though set forth more fully at length in this paragraph ("Complaint").

## II.    SERVICE ON DEFENDANT:

6.      On October 24, 2023, Attorney Lee Auerbach, who has previously identified himself as counsel for Defendant, James Marsh, called undersigned counsel, and stated, "Marsh was served with your Complaint yesterday [October 23, 2023]."

7.      Proof of said service via certified mail is attached hereto as **Exhibit B**.

## III.   LEGAL ARGUMENT:

8.      Assignment is proper at this time under this Court's operating rules, as, per above, at least one Defendant in this action has been served.

9.      This matter is one that is presumptively assigned to the Commerce & Complex Litigation Center as it involves the conduct of internal affairs of MLF, a business enterprise, and the liability of its member, Marsh. (See Alle. Cnty. Pa. 249(1)(b) citing Procedures of the Commerce and Complex Litigation Center A.1(1)).

2

WHEREFORE, Plaintiff, Katie M. Shipp, respectfully requests that this Honorable Court grant the within Motion and assign this action to the Commerce and Complex Litigation Center.

Dated:  October 24, 2023                                Respectfully submitted,

                                                        BLOCK & ASSOCIATES, LLC

                                                        Beverly A. Block, Esquire
                                                        Pa ID No. 93406
                                                        6514 Wilkins Avenue
                                                        Pittsburgh, PA 15217
                                                        bblock@blockpgh.com
                                                        Tel: (412) 532-8355

THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC, | CIVIL DIVISION |
| | Case Number: GD-23-011019 |
| Plaintiff, | |
| v. | |
| JAMES R. MARSH, | |
| Defendant | |
| -and- | |
| MARSH LAW FIRM PLLC, | |
| Nominal Defendant. | |

## ORDER

AND NOW, TO-WIT, this _____ day of _____, 2023, upon review and consideration of Plaintiff's Motion to Assign Case to the Commerce and Complex Litigation Center, it is hereby ORDERED, ADJUDGED and DECREED that said Motion is GRANTED and this action is assigned to the Commerce and Complex Litigation Center.

BY THE COURT:

_____J.

**Exhibit A**
**[Complaint]**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC,** | **CIVIL DIVISION** |
| | **Case Number: GD-23-011019** |
|       **Plaintiff,** | **COMPLAINT IN CIVIL ACTION** |
| **v.** | |
| **JAMES R. MARSH,** | **Filed on Behalf of Plaintiff, KATIE M. SHIPP, individually and derivatively on behalf of THE MARSH LAW FIRM PLLC** |
|       **Defendant,** | |
|     **-and-** | |
| **MARSH LAW FIRM PLLC,** | **Counsel of Record for this party:** |
|       **Nominal Defendant.** | **Beverly A. Block, Esquire**<br>**PA ID No. 93406** |
| <u>**NOTICE TO PLEAD**</u> | **George C. Thompson, Esquire**<br>**PA ID No. 316626** |
| You are hereby notified to file a written response to the enclosed COMPLAINT IN CIVIL ACTION within twenty (20) days from the date of service hereof or a judgment may be entered against you. | **BLOCK & ASSOCIATES, LLC**<br>**6514 Wilkins Avenue**<br>**Pittsburgh, PA 15217**<br>**412-532-8355 (phone)**<br>bblock@blockpgh.com |
| Beverly A. Block, Esquire<br>Attorney for Plaintiff, Katie M. Shipp | <u>**JURY TRIAL DEMANDED**</u> |

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC,** | **CIVIL DIVISION** |
| | **Case Number: GD-23-011019** |
| **Plaintiff,** | |
| **v.** | |
| **JAMES R. MARSH,** | |
| **Defendant** | |
| **-and-** | |
| **MARSH LAW FIRM PLLC,** | |
| **Nominal Defendant.** | |

**NOTICE TO DEFEND**

YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT IN CIVIL ACTION AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11th Floor Koppers Building, 436 Seventh Avenue
Pittsburgh, Pennsylvania 15219
412-261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC,** | **CIVIL DIVISION** |
| | **Case Number: GD-23-011019** |
| **Plaintiff,** | |
| **v.** | |
| **JAMES R. MARSH,** | |
| **Defendant,** | |
| **-and-** | |
| **MARSH LAW FIRM PLLC,** | |
| **Nominal Defendant.** | |

<u>**COMPLAINT IN CIVIL ACTION**</u>

AND NOW, comes Plaintiff, individually and in her capacity as a member of the Nominal Defendant, by and through her attorneys, and files the within Complaint in Civil Action (this "<u>Complaint</u>"), and in support thereof, avers the following:

## I.    <u>INTRODUCTION</u>:

1.    This matter involves a dispute between two law partners, James Marsh, and Katie Shipp, the only two members of a limited liability company, The Marsh Law Firm.

2.    As detailed below, Mr. Marsh refuses to provide Ms. Shipp with information to which she is legally entitled in a deliberate attempt to deprive Ms. Shipp of contractually guaranteed information upon her separation from the Firm.

3.    Mr. Marsh's conduct has harmed and continues to harm not only Ms. Shipp, but it also harms and continues to harm the Firm.

1

## II.    **PARTIES:**

4.      Plaintiff, Katie M. Shipp ("Shipp"), is an adult individual and resident of Allegheny County, Pennsylvania, residing at 1008 Nicole Drive, Bridgeville, PA 15017.

5.      Defendant, James R. Marsh ("Marsh"), is an adult individual and resident of New York, residing at 530 W. 30th Street, Unit 5F New York, NY 10001.

6.      Nominal Defendant, Marsh Law Firm PLLC ("MLF"), is a professional limited liability company, formed in the State of New York, and registered to do business in the Commonwealth of Pennsylvania, with a principal place of business of 31 Hudson Yards, 11th Floor, New York, NY 10001.

7.      MLF has only two members – Marsh, a resident of the state of New York, and Shipp, a resident of the Commonwealth of Pennsylvania.

## III.    **JURISDICTION AND VENUE:**

8.      The Court of Common Pleas of Allegheny County has subject matter jurisdiction over the claims asserted in the instant lawsuit because during all times relevant to this dispute, MLF maintained an office in Allegheny County, where Shipp and other attorneys and paralegals worked.

9.      The Court of Common Pleas of Allegheny County has personal jurisdiction over the Defendants as MLF is registered to do business in Pennsylvania, at all times relevant to this dispute maintained an office in Allegheny County, Pennsylvania, and Shipp has always practiced as an attorney for MLF in Allegheny County, Pennsylvania.

10.     Venue is proper in the Court of Common Pleas of Allegheny County because Shipp is a resident of Allegheny County, Pennsylvania, she is member of MLF, she is a resident of

2

Allegheny County, Pennsylvania, MLF maintains or maintained an office in Allegheny County, Pennsylvania, and the facts giving rise to the lawsuit occurred in Allegheny County, Pennsylvania.

## IV.    FACTUAL BACKGROUND:

11.    MLF is a law firm, with offices in New York, New York and Pittsburgh, Pennsylvania.

12.    MLF primarily represents survivors of sexual abuse and discrimination in a variety of jurisdictions.

## A.    Shipp's Employment at MLF:

13.    Shipp is one of two members at MLF.

14.    Shipp began working as an attorney at MLF in 2013, immediately upon her graduation from law school.

15.    Marsh promoted Shipp to member of MLF in October of 2019.

16.    On April 2, 2020, Shipp and Marsh entered into a Partnership Agreement (the "Partnership Agreement")[1], authored by Marsh, to memorialize, *inter alia*, the terms of certain matters relating to the management of MLF, and to "voluntarily associate themselves as general partners for the purpose of engaging in the general practice of law and matters related and incidental to that practice…" (See Partnership Agreement, a true and correct copy of which is attached hereto as **Exhibit A**, at §§ 1.01, 1.03).

17.    Marsh is the other equity member of MLF, and he is also the designated "Managing Partner" of MLF under the Partnership Agreement. (See id., at § 2.01).

---

[1]    While the agreement is designated as a Partnership Agreement, MLF is actually a professional limited liability company, not a partnership, and Shipp and Marsh are designated herein as members of MLF. While there are continuing references in the Partnership Agreement to Shipp and Marsh as "partners" and to MLF being a "partnership" MLF is not a partnership, and Shipp and Marsh are not partners. They are members.

18.    Beginning in 2021, Marsh demanded that Shipp return several weeks early from her maternity leave to manage MLF's day-to-day operations. Marsh threatened Shipp that if she did not do so, she "may not have a firm to return to."  Marsh failed to provide any type of training or description of his management expectations, and thereafter, Marsh became increasingly unavailable to Shipp as she managed MLF.

19.    Quickly after issuing this directive to Shipp, however, Marsh would not relinquish control over many of MLF's business matters, while simultaneously expecting Shipp to manage the Firm's growing caseload and the oversight of MLF staff.

20.    When Shipp made or attempted to make decisions regarding personnel and other related business matters, Marsh often interfered, undermined, and openly mocked Shipp's decisions and ability to effectively manage the firm.

21.    For instance, to effectively manage MLF's growing caseload, Shipp hired several new attorneys and support staff, and oversaw the opening of MLF's physical office space in Pittsburgh, Pennsylvania; yet, when Shipp tried to manage personnel or implement technology required to carry out the growing business operations, Marsh would inject himself, while demeaning, criticizing, and hamstringing Shipp's efforts.

**B.    Specific Provisions of Shipp and Marsh's Partnership Agreement:**

22.    Section 2.02 of the parties' Partnership Agreement provides that Shipp and Marsh are to split net profit and losses and receive distributions from MLF as follows: 90% to Marsh and 10% to Shipp. (See id., at § 2.02).

23.    By agreement of the parties, the partnership percentages were later amended as follows: 85% to Marsh and 15% to Shipp, and these percentages continue to be the percentages of profit and loss sharing, and distribution sharing for Marsh and Shipp, respectively.

4

24.    Pursuant to Section 2.07 of the Partnership Agreement, Marsh is entitled to "$250,000 each year and [Shipp] shall be entitled to $204,000 each year" as compensation for services in and to the Partnership business. (See id., at § 2.07).

25.    As of June of 2022, Marsh and Shipp each agreed to increase their annual compensation to $401,041.67 to Marsh, and $285,000.00 to Shipp.

26.    Section 2.08 of the Partnership Agreement provides that "[t]he Partners are entitled to the maximum annual allowable contribution to their respective 401(k) retirement accounts which shall be deducted by the Partnership as an ordinary and necessary business expense before determination of net profits." (Id., at § 2.08).

27.    Since Shipp is an MLF employee and a participant in MLF's 401(k) plan (the "Plan"), MLF owes her employer matching contributions, profit sharing contributions, and cash balance plan contributions to the Plan for her benefit for 2023, as required under Section 2.08 of the Partnership Agreement.

28.    Section 3.02 of the Partnership Agreement provides that "no Partner shall incur any obligations in the name or on the credit of the firm exceeding $10,000 without the express written consent of the other Partner.  Any obligation incurred in violation of this provision shall be charged to and collected from the individual Partner incurring the obligation." (Id., at § 3.02).

29.    It is believed and therefore averred that during the term of the Partnership Agreement, Marsh made numerous payments in excess of $10,000 without Shipp's express written consent.

30.    By way of illustrative example, in early to mid-2023, Marsh transferred $700,000.00 from an MLF operating account to one of his personal accounts under the guise that Marsh got a "higher" interest rate in his personal account.

**C.**    **MLF Transition to S-Corp. for Tax Purposes:**

31.    Effective January 1, 2022, MLF became an S-corporation for tax purposes only.

32.    As a result of its status as an S-corporation, MLF is required to make pro rata distributions to its members based on each member's percentage interest in the company.

33.    Upon information and belief, each year, in addition to all other distributions made to Marsh as compensation, Marsh also received a distribution from MLF for Marsh's income tax liability related to MLF's profits.

34.    Shipp has not received any distributions from MLF for her term as a member of MLF, from January 1, 2023, to the current date.

35.    Similarly, Shipp has not received any distributions from MLF for Shipp's income tax liability related to MLF's profits for tax year 2022.

**D.**    **Shipp Provides Notice of Resignation:**

36.    Pursuant to Section 4.01 of the Partnership Agreement, "[a]ny Partner may withdraw from the Partnership by giving the Partner(s) 30 days written notice of their intention to do so." (Id., at § 4.01).

37.    On June 7, 2023, Shipp noticed her resignation to Marsh. (See Resignation Letter, a true and correct copy of which is attached hereto as **Exhibit B**).

38.    Accordingly, Shipp intended her resignation from MLF to be effective thirty (30) days later, on July 7, 2023.

39.    Because she was overseeing MLF's day-to-day case management operations at the time of her resignation, immediately upon notice of her resignation, Shipp updated and circulated detailed correspondence and spreadsheets detailing MLF's caseload, fee projections, and staffing and operational matters, and sent same to Marsh.

40.     Specifically, in Shipp's caseload and fee projection spreadsheet, Shipp included financial projections of the anticipated settlement proceeds for each case in which MLF or one of its co-counsel firms was a participant. At or around the time of Shipp's resignation, projected settlement amounts for these cases exceeded $3,000,000.00.

41.     Upon information and belief, Marsh is presently manipulating, or will manipulate, the finances of MLF to improperly reduce payments due to Plaintiff under the Partnership Agreement.

**E.      Shipp's Contractual Entitlement to Documentation:**

42.     Pursuant to Section 2.01 of the Partnership Agreement, "[a]ll Partnership bank statements are required to be provided to any Partner immediately upon request." (Id., at § 2.01).

43.     Additionally, and per Section 2.04 of the Partnership Agreement, Marsh is required to "keep accurate accounting books in which all matters concerning the Partnership…[which] shall be available for examination by any Partner immediately upon request." (Id., at § 2.04).

44.     Similarly, pursuant to Section 2.06 of the Partnership Agreement,

> Upon request of any Partner, a complete accounting of the partnership's affairs as of the close of business on the last day of the previous month shall be delivered within 10 days. Upon such accounting, the net profits of the Partnership shall be distributed to the Partners as provided in this agreement to the extent that cash is available for distribution.

(See id., at § 2.06).

45.     Thus, and pursuant to Sections 2.01, 2.04, and 2.06 of the Partnership Agreement, on June 13, 2023, Shipp requested that Marsh provide her with updated financials and information on MLF's five-year financial projections.

46.     At all times relevant to this dispute, Marsh has met with MLF's outside accountants weekly, each Wednesday to review MLF's financials.

7

47.     Pursuant to Section 4.03 of the Partnership Agreement, "[u]pon the withdrawal…of a Partner, the Partnership shall pay to the withdrawing…Partner…the Partner's distributive share of any net profits earned by the Partnership on matters currently in existence as evidenced by signed retainer agreements on the date of the Partner's withdrawal…." (See Partnership Agreement, at § 4.03).

48.     Section 4.03 further provides that the "distributive share shall be paid out over time as matters resolve as follows: 100% for the first 12 months, 80% for the second 12 months, 60% for the for the third 12 months, 40% for the fourth 12 months, and 20% for the for the fifth 12 months.  After 60 months, the withdrawing…Partner's interest shall forever terminate." (See id.).

49.     On June 28, 2023, Shipp renewed her June 13, 2023 demand that, per the Partnership Agreement, she be provided with an accounting of MLF's financial records. (See 6/28/23 Email, a true and correct copy of which is attached hereto as **Exhibit C**).

50.     Almost immediately after Shipp sent her email to Marsh on June 28, 2023 – and without any notice – Marsh terminated Shipp's access to all MLF's computer systems even though she was in the process of preparing a thorough exit memorandum containing a summary of all then-current MLF matters.

51.     Marsh then engaged in a pattern of inappropriate conduct, including, *inter alia*, contacting MLF employees, contractors, clients, co-counsel, and vendors to sow dissention and defame Shipp's reputation.

52.     Specifically, Marsh sent emails and text messages to various individuals describing Shipp as "dishonest," "unprofessional," "unaccountable," and "non-transparent."

53.     On July 10, 2023, undersigned counsel, on Shipp's behalf, reiterated Shipp's prior demands for documentation, and requested that Marsh immediately cease and desist from engaging

in the above-referenced activities. (See 7/10/23 Letter, a true and correct copy of which is attached hereto as **Exhibit D**).

54.    Within that correspondence, undersigned counsel also requested – for the third time – detailed accounting information "for all Partnership books and records for 2022 and year-to-date for 2023, as defined in Section 2.04 of the Partnership Agreement, as well as a complete accounting of the partnership's affairs as per Section 2.06 of the [Partnership] Agreement for the same period." (See id.).

55.    Additionally, undersigned counsel requested a copy of the MLF's "federal, state and local income tax or information returns and reports for the three most recent fiscal years (Dec. 31, 2020, Dec. 31, 2021, and Dec. 31, 2022), and [the MLF's] financial statements…for the same periods," requesting that same be provided on or before July 19, 2023.  (See id.).

56.    Per the correspondence on July 10, 2023, undersigned counsel directed Marsh to stop defaming Shipp to third parties and others at MLF, and directed Marsh and MLF "to preserve and not destroy copies of all documents, including all electronically stored information (ESI)…" (See id.)

57.    Despite Shipp's countless demands for MLF's financial data, as required by the Partnership Agreement, MLF and Marsh have failed or otherwise refused to provide Shipp with:

    a.    Copies of all Partnership books and records for 2022 and year-to-date for 2023, as defined in Section 2.04 of the Partnership Agreement.

    b.    Copies of federal, state, and local income tax or information returns and reports for the fiscal years of 2020 and 2021.

    c.    A complete accounting of MLF's affairs as per Section 2.06 of the Partnership Agreement for the same period.

     d.     Information to enable her to calculate her distributive share of MLF's net profits for matters currently in existence and evidenced by retainer agreements.

58.     On July 24, 2023, undersigned counsel contacted Plum Logic, LLC d/b/a Bookkeeper360.com, MLF's outside accounting firm ("Bookkeeper360.com"), and requested that they "preserve all [ESI], documents, and records relevant to potential litigation associated with the financial and tax records" of MLF. (See 7/24/23 Letter, a true and correct copy of which is attached hereto as **Exhibit E**).

59.     Terry Rubenfeld, Bookkeeper360's Chief Operating Officer, immediately confirmed receipt of the aforementioned letter. (See 7/24/23 E-Mail, a true and correct copy of which is attached hereto as **Exhibit F**).

60.     On August 10, 2023, Attorney Lee David Auerbach of Auerbach Law Group, P.C., notified undersigned counsel that he was retained to represent Marsh and MLF.

61.     Throughout the past two months, Shipp, through undersigned counsel, has made countless requests to Mr. Auerbach that he provide all requested information to Shipp per the Partnership Agreement.

62.     Despite many calls and emails to Mr. Auerbach, Marsh and MLF have declined to provide the vast majority of the requested information to Shipp.

63.     The urgency of Shipp's requests for information as provided in the Partnership Agreement is heightened given Marsh's history of putting his personal agenda above those of MLF.

**F.**     **Marsh's Self-Interested Conduct:**

64.     Marsh operated MLF's bank accounts as if they were his own personal accounts by e.g., making many expenditures more than $10,000.00 without Shipp's approval, in violation of Section 3.02 of the Partnership Agreement.

65.     Due to Marsh's history of transferring funds out of MLF, and payments of MLF's funds in excess of $10,000.00 without Shipp's written approval, Shipp requires financial, accounting and tax information from the MLF to ensure that the provisions of the Partnership Agreement are being respected, and payments made in exchange for her membership interest are correct and proper.

66.     Plaintiff brings this action individually against MLF and Marsh as a breach of contract claim under the Partnership Agreement, as well as derivatively on behalf of MLF, in part, to recover funds wrongfully taken, distributed or diverted by and/or to Marsh, and to compel MLF and Marsh to comply with a monthly accounting of MLF to Plaintiff, to ensure that Plaintiff receives the required payments due from MLF (a) as her distributive share of distributions from MLF from January 1, 2023 to July 7, 2023; (b) due to her as a participant of the Plan; and (c) to which she is entitled to receive in exchange for her membership interest in MLF, and to further ensure that all of the required payments under the Partnership Agreement have been properly calculated.

**COUNT I**
**Breach of Contract - Specific Performance**
**(Plaintiff Individually v. Defendant Marsh)**

67.     All previous paragraphs are hereby incorporated by reference.

68.     By executing the Partnership Agreement, Marsh and Shipp agreed that upon a Partner's withdrawal from MLF, Marsh granted Shipp the right to receive, on a timely basis,

detailed bank account, accounting, tax, and other information about her distributive share to which she is contractually entitled.

69.     Marsh's abject failure to honor his obligations under the Partnership Agreement, as set forth above, constitutes material breaches of the Partnership Agreement.

70.     Marsh has failed to comply with the terms of the Partnership Agreement, thereby preventing Shipp from adequately analyzing MLF's financial status, as is her right as a member of MLF, and impeding her from exercising her rights as a member of MLF.

71.     Marsh has failed to comply with the terms of the Partnership Agreement relating the period from January 1, 2023 to July 7, 2023, when Marsh was required to make distributions of MLF's net profits to Shipp, and Marsh failed to provide all required MLF contributions to the Plan for the benefit of Shipp.

72.     Marsh has failed to make distributions to Shipp for her 2022 income tax liability associated with her proportionate share of the net income of MLF, while receiving distributions from MLF for his own income tax obligations.

WHEREFORE, Shipp respectfully requests this Honorable Court enter judgment in its favor, and against Marsh, and award the following relief:

a.     On a monthly basis, order Marsh to execute and deliver to Shipp any and all necessary documents and information requested by her concerning her distributive share of Partnership profits and losses, and the Partnership Agreement, including but not limited to the following:

i.     Copies of bank statements for MLF for January 1, 2022, to August 31, 2023;

ii.    Income statements for MLF for the period of January 1, 2022, to December 31, 2022;

iii.    List of all expense and capital transactions that exceed $10,000.00 that were incurred by MLF in 2022, 2023, and continuing monthly on the 15th of the month following the reporting month, until this dispute is fully and finally resolved by the Court;

iv.    Monthly report of the date and amount of each distribution made to Marsh in 2022, 2023, and for any future periods continuing until this dispute is resolved by this Court, with all future reports provided to Shipp on the 15th day of the month following the calendar month of the report;

v.    Copies of all MLF monthly credit card statements for firm credit cards held by Marsh, or personal credit card statements of Marsh paid by MLF, for 2022, 2023, and for any future periods continuing until this dispute is fully and finally resolved by the Court, with all future reports provided to Shipp on the 15th day of the month following the calendar month of the report.

vi.    Continuing and ongoing provision of MLF's monthly bank statements, income statements, balances sheets, expense and capital transactions, and distributions to Marsh, from September 1, 2023, until this dispute is fully and finally resolved by the Court, provided to Shipp no later than the 15th day after the end of the previous calendar month;

vii.    Beginning from payments received by MLF in January 1, 2022, and continuing until this dispute is fully and finally resolved by the Court, a monthly summary of payments made to MLF and/or any joint or co-counsel, including but not limited to, Pfau Cochran Vertesis and Amala (PCVA), Jennifer Freeman, Robert Lewis, Carol Hepburn, Deb Bianco, Bruce Young, Faraci Lange, and Gina DeCrescenzo in settlement or resolution of claims from each

individual or entity, and detailed information about the date of payment, amount of payment, case identifying information, plaintiff and defendant to whom each payment relates, with ongoing monthly reporting provided no later than the 15th day after the end of the previous calendar month, until this dispute is fully and finally resolved by the Court;

viii.    Copies of federal and state tax returns for MLF for 2023, including copies of all K-1s for each partner, and continuing for future years until this dispute is fully and finally resolved by the Court; and

ix.    Other financial information reasonably requested by Shipp to ensure that her rights under the Partnership Agreement are protected.

b.    Cause MLF to pay Shipp her distributive share of distributions of net profits from MLF for January 1, 2023 to July 7, 2023, as required under Section 2.02 of the Partnership Agreement.

c.    Cause MLF to pay to the Plan, for the benefit of Shipp as a participant in the Plan, all required company matching contributions, profit sharing contributions and cash balance plan contributions due for the period of Shipp's employment with MLF, from January 1, 2023 to July 7, 2023, as required under Section 2.08 of the Partnership Agreement.

d.    Such other and further relief as this Honorable Court deems just and appropriate.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## (Plaintiff derivatively on behalf of MLF v. Defendant Marsh)

73.    All previous paragraphs are hereby incorporated by reference.

74.    By his actions or inactions above, Defendant Marsh has breached his fiduciary duties owed to MLF, by:

       a.     Negligently or intentionally failed to act in good faith and solely for the benefit of MLF in all matters for which he was employed and elected.

       b.     Taking, using, or misusing company assets, funds, resources, distributions, and benefits.

       c.     Failing to properly account to Plaintiff and failing or refusing to provide to Plaintiff complete information concerning MLF's affairs.

       d.     Failing to properly conserve the property of MLF.

       e.     Failing to properly protect the interests of Plaintiff in MLF.

       f.     Transferring $700,000.00 of MLF's funds to his personal bank account.

       g.     Expending funds in excess of $10,000.00 without Shipp's prior written approval.

75.     As a direct and proximate result of Marsh's breach of his fiduciary duties, MLF has sustained and continues to sustain damages and injuries.

76.     Shipp brings this claim derivatively on behalf of MLF in order to obtain a remedy for Marsh's breach of fiduciary duties to MLF.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Marsh and award relief as follows:

       a.     Directing Marsh to account fully for any and all payments, assets, resources, distributions, or benefits whatsoever received by him, or anyone through him or on his behalf, from 2022 through the present date;

       b.     Directing Marsh to refund and/or repay over to MLF all payments, assets, resources, distributions, or benefits improperly or wrongfully paid him, or paid for his benefit;

c.      Compelling Marsh to surrender any and all company records requested by Shipp, and to fully cooperate in a forensic audit of MLF for the years 2022 through the present date;

d.      Enjoining and precluding Marsh from excluding Shipp from access to any records or accounts of or related to MLF, from using or accessing any financial accounts of MLF, and from making or causing to be made any distributions or disbursements from any of the financial accounts of MLF, without the prior written approval of Shipp;

e.      Entering an award of damages in an amount in excess of the arbitration limits for the assets, funds, resources, distributions, and benefits which Marsh has taken from MLF; and

f.      Enter an award of all expenses, costs, attorneys' fees, punitive damages, and such other and further relief as this Honorable Court deems just and appropriate.

## COUNT III
## ACCOUNTING
### (Plaintiff individually and derivatively on behalf of MLF v. Defendant Marsh)

77.      All previous paragraphs are hereby incorporated by reference.

78.      At all times material and relevant hereto, Marsh controlled MLF's financial matters, including any and all financial accounts, bank accounts, accounting information and federal, state and local tax return information and filings.

79.      Soon after Shipp provided notice of her intent to withdraw from the MLF partnership, Marsh terminated her access to MLF's books, records and papers of the business, which now remain in Marsh's exclusive custody and control.

80.      Plaintiff has made countless demands on Marsh to provide financial information relating to MLF's operations from 2022 through the present date.

16

81.    Despite repeated demand for the same, Marsh has refused to account for MLF's financial operations.

82.    Marsh is liable to MLF for the value of any monies or property shown by the accounting to have been improperly distributed, wasted, converted, or lost.

83.    As a direct and proximate result of Marsh's breach of his fiduciary duties, MLF has sustained and continue to sustain damages and injuries.

84.    Plaintiff brings this claim, in part, derivatively on behalf of MLF in order to obtain a remedy for Marsh's breach of fiduciary duties to MLF.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Marsh and award relief as follows:

a.    Direct Marsh to fully account for any and all payments, assets, resources, distributions, or benefits whatsoever received by him, or anyone through him or on his behalf, from 2022 through the present date;

b.    Direct Marsh to refund and/or repay over to MLF all payments, assets, resources, distributions, or benefits improperly or wrongfully paid to, diverted to, or received by him, or for his benefit;

c.    Compel Marsh to reimburse MLF from his personal funds for any fees, charges, penalties, liens, fines or other expenses incurred by MLF as a result of or associated with the preparation and/or completion of said accounting including but not limited to accounting fees, legal fees or other expenses;

d.    Compel Marsh to surrender any and all company records requested by Plaintiff and to cooperate fully in a forensic audit of MLF for the years 2022 and continuing until the date this dispute resolved;

e.      Enjoin and preclude Marsh from (i) excluding Shipp from access to any records or accounts of or related to MLF, (ii) using or accessing any financial accounts of MLF; and (iii) making or causing to be made any distributions or disbursements from any of the financial accounts of any of the MLF without approval of Shipp;

f.      Enter an award of damages in an amount in excess of the arbitration limits for the assets, funds, resources, distributions, and benefits which Marsh has taken from MLF; and

g.      Enter an award of expenses, costs, attorneys' fees, punitive damages, and such other and further relief as this Honorable Court deems just and appropriate.

## COUNT IV
## UNJUST ENRICHMENT
### (Plaintiff derivatively on behalf of MLF v. Defendant Marsh)

85.      All previous paragraphs are hereby incorporated by reference.

86.      Marsh has assumed full control over MLF and has taken for himself significant economic benefits accruing from the operation of MLF without compensation to MLF, including, but not limited to, making transferring $700,000.00 of the assets of MLF to his personal account, and making disbursements from MLF's assets in excess of $10,000.00 without Shipp's written approval.

87.      Marsh knew or should have known that MLF would be harmed by taking for himself benefits accruing from the operation of MLF and the unlawful refusal to return such benefits to MLF without providing adequate compensation therefore.

88.      As a result of improperly diverting MLF funds for his benefit, Marsh has been unjustly enriched.

89.      MLF is entitled to just compensation for the reasonable value of the foregoing benefits taken by Marsh.

90.     As a direct and proximate result of Marsh's taking of the foregoing benefits without adequate compensation, MLF has sustained and continues to sustain damages and injuries.

91.     Shipp brings this claim derivatively on behalf of MLF in order to obtain a remedy for Marsh's unjust enrichment at the expense of and to the detriment of MLF.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Marsh and award relief as follows:

        a.     Direct Marsh to account fully for any and all payments, assets, resources, distributions, or benefits whatsoever received by him, or anyone through him or on his behalf, from 2022 through the date that this dispute is resolved;

        b.     Enter an award of damages in an amount in excess of the arbitration limits for the assets, funds, resources, distributions, and benefits which Marsh has improperly taken from MLF; and

        c.     Enter an award of expenses, costs, attorneys' fees, punitive damages and such other relief as the Court may deem just.

## COUNT V
## APPOINTMENT OF A CUSTODIAN
### (Plaintiff derivatively on behalf of MLF v. All Defendants)

92.     All previous paragraphs are hereby incorporated by reference.

93.     Plaintiff believes and therefore avers that Defendant Marsh has acted oppressively, and/or fraudulently toward MLF.

94.     Shipp further believes and therefore avers that Marsh has misapplied and/or wasted the assets of MLF.

95.     As a direct and proximate result of Marsh's illegal, oppressive and/or fraudulent actions, MLF has sustained and continue to sustain damages.

96.     As a direct and proximate result of Marsh's waste and misapplication of the assets of the company, MLF has sustained and continues to sustain damages.

97.     Despite repeated demands, however, Marsh has refused to cooperate with a necessary and appropriate investigation into the accounts of MLF.

98.     Marsh has refused to provide necessary information to conduct a necessary and appropriate investigation into MLF's accounts.

99.     MLF's members, namely, Shipp and Marsh, are plainly deadlocked in the management of the business and affairs of MLF, such that that Shipp believes it is necessary and appropriate to conduct an examination of, and investigation into MLF's accounts and Marsh refuses to cooperate with such examination and investigation.

100.    No mechanism exists for breaking the deadlock on these issues.

101.    The appointment of a custodian is necessary to prevent irreparable harm to MLF and its members.

102.    The appointment of a custodian is necessary to terminate Marsh's oppressive, and fraudulent conduct toward MLF.

103.    MLF's assets are in danger of depletion due to the continued misapplication and waste of the MLF's assets, funds, resources, and benefits.

104.    The appointment of a custodian is necessary to take charge of MLF's assets and business to prevent further waste and dissipation of MLF's interests.

105.    The appointment of a custodian is necessary to resolve the deadlock in MLF's management of its business affairs.

106.    If a custodian is not appointed to take charge of MLF's assets and business affairs, MLF will suffer irreparable injury.

WHEREFORE, Plaintiff respectfully requests that the Court:

      a.      Appoint a custodian for MLF;

      b.      Grant the custodian all necessary powers to break the deadlock of MLF's members, to take charge of MLF's assets and business, to prevent the further waste and dissipation of the company's interests, and to terminate the oppressive, and fraudulent conduct toward MLF;

      c.      Grant the custodian all necessary powers to determine whether to pursue any litigation on behalf of MLF, which the custodian may determine to be necessary or advantageous to MFL;

      d.      Remove Marsh as an officer, manager, and Managing Member of MLF; and

      e.      Enter an order containing any other such and further relief as this Honorable Court deems just and appropriate.

Respectfully submitted,

Block & Associates, LLC

Beverly A. Block, Esquire
Pa. I.D. No. 93406
6514 Wilkins Avenue
Pittsburgh, PA  15217
(412) 532-8355 (main)
bblock@blockpgh.com

## **VERIFICATION**

The below signer verifies that the within Complaint is based upon information furnished to counsel. The language of the Complaint is that of counsel and not necessarily that of the signer. Signer verifies that she has read the Complaint and that the information contained therein is true and correct to the best of her knowledge, information, and belief. To the extent that the language of the Complaint is that of counsel, signer has relied upon counsel in making this Verification. This Verification is made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

Date: 10/19/2023                          By:   *Katie M. Shipp*
                                                Katie M. Shipp

EXHIBIT A

## MARSH LAW FIRM PLLC
## Partnership Agreement

James R. Marsh and Katie M. Shipp, hereinafter referred to as "Partners," agree that:

# ARTICLE 1. NATURE OF PARTNERSHIP

**1.01 Partnership Purpose.** The Partners voluntarily associate themselves as general partners for the purpose of engaging in the general practice of law and matters related and incidental to that practice under the laws of the State of New York

**1.02 Name of Partnership.** The name of the Partnership shall be Marsh Law Firm PLLC.

1.03 Term of Partnership.  The Partnership commenced on January 1, 2019 and shall continue until dissolved by mutual agreement of the parties or terminated as provided in this Agreement. This Partnership Agreement supersedes and replaces all prior partnership agreements concerning the Marsh Law Firm PLLC.

**1.04. Place of Business.** The Partnership offices shall be located at 151 E. Post Road Suite 102, White Plains, New York 10601 and any other place or places in New York that may be designated by majority vote of the Partners.

# ARTICLE 2. PARTNERSHIP FINANCES

**2.01 Deposit and Withdrawal of Funds.** All Partnership funds shall be deposited in a Partnership bank account established at JPMorgan Chase Bank. The Partners hereby designate James R. Marsh to be the Managing Partner who shall be authorized to sign checks and make withdrawals and transfers from such bank accounts. All partnership bank statements shall be made available to any Partner immediately upon request.

**2.02 Profits and Losses.** Any ordinary and necessary expenses incidental to the Partnership business shall be paid out of the Partnership operating account. Any net profits or losses that may accrue to the Partnership shall be distributed to or borne by the Partners in the following proportions: James R. Marsh, 90%, Katie M. Shipp, 10%.

**2.04 Partnership Books.** At all times during the continuation of the Partnership, the Managing Partner shall keep accurate accounting books in which all matters concerning the Partnership, including all of its income, expenditures, assets, and liabilities, shall be entered. These books shall be kept on a cash basis and shall be available for examination by any Partner immediately upon request.

**2.05 Fiscal Year.** The fiscal year of the Partnership shall end on the 31st day of December.

**2.06 Accountings.** Upon request of any Partner, a complete accounting of the partnership's affairs as of the close of business on the last day of the previous month shall be delivered within 10 days. Upon such accounting, the net profits of the Partnership shall be distributed to the Partners as provided in this

EXHIBIT A

agreement to the extent that cash is available for distribution. Except as to material errors discovered within 30 days after issuance, each accounting shall be final and conclusive to each Partner.

**2.07 Salaries.** As compensation for his or her services in and to the Partnership business, James R. Marsh shall be entitled to $250,000 each year and Katie M. Shipp shall be entitled to $204,000 each year, which shall be deducted by the Partnership as an ordinary and necessary business expense before determination of net profits. The salary of any Partner may be adjusted at any time by mutual agreement of all the partners.

**2.08 Retirement Contribution.** The Partners are entitled to the maximum annual allowable contribution to their respective 401(k) retirement accounts which shall be deducted by the Partnership as an ordinary and necessary business expense before determination of net profits. The retirement contribution to any Partner may be adjusted at any time by mutual agreement of all the Partners.

**2.09 Net Profits Defined.** The term "net profits" as used in this Agreement shall mean the net profits of the Partnership as determined by generally accepted accounting principles for each accounting period provided for in this Agreement.

**2.10. Reserves.** The Partnership shall maintain a reserve of one year's expenses in cash or a line of credit or a combination of the two.

**2.11 Designated Partnership Representative.** James R. Marsh is the Designated Partnership Representative for all tax matters concerning the Partnership. All available partnership tax returns shall be made available to any partner immediately upon request.

## ARTICLE 3. RIGHTS AND DUTIES OF PARTNERS

**3.01 Time Devoted to Partnership.** Each Partner shall devote his or her undivided time and attention and use the utmost of his or her skills and ability in furtherance of the Partnership business.

**3.02 Management and Authority.** Each Partner shall have an equal voice in the management of the Partnership and shall have the authority to bind the Partnership in making contracts and incurring obligations in the name and on the credit of the Partnership. However, no Partner shall incur any obligations in the name or on the credit of the firm exceeding $10,000 without the express written consent of the other Partner. Any obligation incurred in violation of this provision shall be charged to and collected from the individual Partner incurring the obligation.

## ARTICLE 4. WITHDRAWAL, INVOLUNTARY DISCHARGE, DEATH OR DISSOLUTION

**4.01 Withdrawal of Partner.** Any Partner may withdraw from the Partnership by giving the Partner(s) 30 days written notice of their intention to do so.

**4.02 Withdrawal, Discharge, or Death of a Partner.** Upon the withdrawal, involuntary discharge, or death of a Partner, the remaining Partner(s) may continue the Partnership business or transfer matters currently in existence as evidenced by signed retainer agreements on the date of the Partner's

EXHIBIT A

withdrawal, involuntary discharge, or death, subject to the following terms and conditions which shall be binding on any subsequent transferees to the extent permitted by New York Law and attorney ethics. The remaining Partner(s) or transferees shall pay to the withdrawing or involuntarily discharged Partner, or the deceased Partner's Personal Representative or Distributee listed in Appendix I, as provided in paragraph 4.03 of this Agreement.

**4.03 Value of Partnership Interest.** Upon the withdrawal, involuntary discharge, or death of a Partner, the Partnership shall pay to the withdrawing or involuntarily discharged Partner, or the deceased Partner's Personal Representative or Distributee, the Partner's distributive share of any net profits earned by the Partnership on matters currently in existence as evidenced by signed retainer agreements on the date of the Partner's withdrawal, involuntary discharge, or death. The distributive share shall be paid out over time as matters resolve as follows: 100% for the first 12 months, 80% for the second 12 months, 60% for the third 12 months, 40% for the fourth 12 months, and 20% for the fifth 12 months. After 60 months, the withdrawing, involuntarily discharged, or deceased Partner's interest shall forever terminate.

**4.04 Dissolution.** Upon dissolution of the Partnership, all Partnership assets, but excluding any files or records pertaining to the affairs of its clients, shall be liquidated and the proceeds distributed in the manner specified under New York law.

## ARTICLE 5. MISCELLANEOUS

**5.01 Additional Partners.** The Partners may by unanimous vote admit additional Partners and fix the capital contributions, if any, to be made and the participation percentage in profits and losses of any additional Partners. Before being admitted, each additional Partner must first agree in writing to be bound by the provisions of this Agreement.

**5.02 Notices.** Any notices permitted or required by law or by this Agreement shall be in writing and shall be deemed duly given when personally delivered to the Partner to whom they are addressed or when deposited in the United States mail, first-class postage prepaid, certified, addressed to that Partner at the address that appears below that Partner's signature at the end of this Agreement or when delivered by email to the email address that appears below that Partner's signature at the end of this agreement.

**5.03 Amendments.** No amendment to this Agreement shall be valid unless made in writing and signed by all the Partners.

**5.06 New York Law Controls.** Any requirements which are not included in this Agreement shall be controlled and determined by appliable New York Law.

EXHIBIT A

Executed on April 2, 2020 in White Plains, Westchester County, New York.

James R. Marsh
151 East Post Road, Suite 102
White Plains, NY 10601
jamesmarsh@marsh.law


Executed on April 2, 2020 in Carnegie, Allegheny County, Pennsylvania.

Katie M. Shipp
510 Washington Road
Carnegie, PA 15106
katieshipp@marsh.law

EXHIBIT A

## APPENDIX 1
### Partner's Distributees Pursuant to Section 4.02 and 4.03

**James R. Marsh hereby designates the following Distributee(s)**

Sara E. Marsh born May 3, 1996 or her issue per stirpes 25% interest
Jonah B. Marsh born May 30, 1999 or his issue per stirpes 25% interest
Daniel A. Marsh born October 28, 2004 or his issue per stirpes 25% interest
Lily I. Perry born December 13, 2002 or her issue per stirpes 25% interest

Executed on April 2, 2020 in White Plains, Westchester County, New York.

James R. Marsh
151 East Post Road, Suite 102
White Plains, NY 10601
jamesmarsh@marsh.law


**Katie M. Shipp hereby designates the following Distributee(s)**

Andrew T. Shipp born June 12, 1987 or his issue per stirpes 100% interest

Executed on April 2, 2020 in Carnegie, Allegheny County, Pennsylvania.

Katie M. Shipp
510 Washington Road
Carnegie, PA 15106
katieshipp@marsh.law

EXHIBIT B

**From:** James R. Marsh <jamesmarsh@marsh.law>
**Date:** Thursday, June 8, 2023 at 11:27 PM
**To:** Katie M. Shipp <katieshipp@marsh.law>
**Subject:** RE: Notice

Thank you Katie for all your years of dedication to our clients and our firm. You have been such an instrumental part of everything we've done over the past DECADE. I will miss you greatly.

James

**James R. Marsh**
Marsh Law Firm PLLC
_____

**Direct:** 929-232-3235
**Main:** 212-372-3030
**Web:** www.marsh.law
**Email:** jamesmarsh@marsh.law
31 Hudson Yards, 11th Floor, New York, NY 10001

EXHIBIT B



---

**From:** Katie M. Shipp <katieshipp@marsh.law>
**Sent:** Thursday, June 8, 2023 10:01 AM
**To:** James R. Marsh <jamesmarsh@marsh.law>
**Subject:** Re: Notice

James,

Please also let this serve as my formal resignation from the Children's Justice Fund as a board member.

Sincerely,

*Katie M. Shipp, Esq.*
Managing Partner



Office: (212)-372-3030
Direct: (929)-232-3181
KatieShipp@marsh.law

---

**From:** Katie M. Shipp <katieshipp@marsh.law>
**Date:** Wednesday, June 7, 2023 at 2:53 PM
**To:** James R. Marsh <jamesmarsh@marsh.law>
**Subject:** Notice

James,

I am so proud of what we have accomplished and built together over the last 11 years. I am incredibly grateful for the opportunity to join the firm, move up to partner, and eventually to managing partner. I have learned and grown so much professionally and personally from you and the firm as a whole. I believe fully in the team we have built- watching each team member grow into their roles has been so meaningful. I know that they will continue to blossom under your leadership.

You have taught me so much throughout the years and I am so thankful for that- it's hard to put it in words. There were times that my family needed to take priority due to medical issues and you always gave me the time and grace to do that. I know I would not have had that ability anywhere else- you allowed me to pursue my career goals while also caring for those I love. This was truly a gift- thank you. You taught me the power of advocacy, how to be a voice for those who have been left voiceless, and how to continue the fight even when the deck is stacked against me. I will take that with me in wherever life takes me next.

I remain dedicated to this fight- though, going forward, it will be in a different capacity. I cherish the memories  we have made and sincerely hope we can work together again in the future. I know there is so much more to do and that I want to be a part of it in some way.

EXHIBIT B

I want to thank you for being so understanding when I shared my decision with you today. Even though I know this is the right decision for me and my family, it has been difficult and emotional to accept. I appreciate you supporting me (like you have done in the past so many times).

As I shared with you on the phone today, this will serve as my 30 day notice of my withdrawal as partner at Marsh Law Firm. My last day with the firm will be July 7, 2023. I look forward to working on the transition with you and know we can make it positive for all involved.

Sincerely,

*Katie M. Shipp, Esq.*
Managing Partner



Office: (212)-372-3030
Direct: (929)-232-3181
KatieShipp@marsh.law

---

**CONFIDENTIALITY NOTICE:** The information contained in this message and any attachment is confidential and may be subject to the attorney-client privilege, or otherwise protected from disclosure by applicable law. Any disclosure, distribution, copying, or use of the information contained in this message or any attachment by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system.

**IF YOU ARE NOT A CLIENT:** *This material is general information of an educational nature and is not legal advice. This communication does not establish or constitute the retention of Marsh Law Firm PLLC for the provision of legal services, unless explicitly so stated herein. Any attached items, including the content of this e-mail, are offered "as is" with no guarantee as to their accuracy, timeliness, or completeness.*

EXHIBIT C

**From:** Katie Shipp <katiemshipp@gmail.com>
**Sent:** Wednesday, June 28, 2023 12:24 PM
**To:** jamesmarsh@marsh.law
**Cc:** jenniferfreeman@marsh.law
**Subject:** Termination of Partnership

Dear James,

Per our Partnership Agreement ("Agreement"), and as you are aware, I provided the firm with 30-days' advanced written notice of my intent to withdraw from our partnership. Pursuant to that notice, my last day of employment at Marsh Law Firm (the "Firm") was planned to ~~be July 7,~~ 2023.

From the ~~various~~ correspondences that I have received from you, coupled with emails you have cc'd me on with others, and based on my having been shut out of various Firm systems, it seems as though you would like to expedite my departure from the Firm to make it effective immediately. If that is your desire, please let me know upon your receipt of this correspondence. I will agree to an earlier departure date, acknowledging that I have provided the requisite notice under the Agreement.

Upon a partner's withdrawal from the Firm, pursuant to Section 4.03 of the Agreement, the Firm is required to pay the departing partner, "the Partner's distributive share of any net profits earned by the Partnership on matters currently in existence as evidence by signed retainer agreements" as of July 7, 2023 (the "Distributive Share"). According to the Agreement, the Distributive Share shall be paid, as follows: "100% for the first 12 months, 80% for the second 12 months, 60% for the third 12 months, 40% for the fourth 12 months, and 20% for the fifth ~~12 months." My me~~mbership interest in the Firm terminates only after the expiration of this 60-month period.

To effectuate each payout of the Distributive Share, Section 2.06 of the Agreement would require the Firm to provide me with a complete monthly accounting upon demand, within ten (10) days of my request for same. In the spirit of compromise, I am willing to waive this accounting requirement and devise an alternative arrangement to hasten a less cumbersome break. As such, I am making the following proposal:

1.  The Firm pays Katie M. Shipp ("Shipp") the amount of $3,250,000, in full and complete settlement of the amounts due to her under Section 4.03 of the Partnership Agreement, pursuant to a note that bears the following terms:

    a.  $500,000 paid on or before August 31, 2023;
    b.  $250,000 paid on or before December 31, 2023;
    c.  $500,000 paid on or before June 30, 2024;
    d.  $750,000 paid on or before December 31, 2024;
    e.  $500,000 paid on or before June 30, 2025; and
    f.  $750,000 paid on or before December 31, 2025.

    Interest will be paid on the outstanding unpaid balance based on the July 2023 semi-annual AFR rate (4.74%). There will not be a prepayment penalty. The note will be secured by my ownership interest in the Firm and personal guaranties. I will arrange for the preparation of the Note, at my exclusive cost.

EXHIBIT C

2. Payment by the Firm of the full amount of the Firm's portion of the 401(k) and cash-balance plan contribution for 2022, and the pro rata portion due for January 1, 2023 to July 7, 2023.

3. Execution of a mutual settlement and release agreement, releasing all claims between Shipp, James Marsh, individually, Jennifer Freeman, and the Firm, which will include a mutual non-disparagement provision, and an agreed-upon statement that we will release to clients, vendors, partners, co-counsel, etc. about Shipp's exit from the Firm.

4. Filing a change of registered address for Marsh Law Firm PLLC with the Pennsylvania Department of State, to remove my home address as the registered address of Marsh Law Firm PLLC in Pennsylvania.

5. Filing of all required annual registration statements due with the Pennsylvania Department of State for Marsh Law Firm PLLC; and

6. Satisfaction of all liens relating to the two UCC financing statements on file with Pennsylvania Department of State with Marsh Law Firm PLLC as the debtor.

Please know that this email is sent with the sincere hope that we can work together towards an amicable split of our 12-year relationship. As you know, we have built an incredibly successful Firm together, and I am hopeful that we can carry out this exit productively, such that the Firm can continue to operate and serve our very deserving clients. In the meantime, I respectfully ask that you immediately discontinue the use of language in your written correspondence with others that seems intended to impugn my reputation. I do not see how any of that is helpful in connection with this matter.

I will make myself available to discuss these terms at your convenience. Please provide a response to my proposal by July 3, 2023.

Sincerely,

Katie M. Shipp

EXHIBIT D



July 10, 2023

**_VIA EMAIL and CERTIFIED MAIL_**
**_RETURN RECEIPT REQUESTED_**
Mr. James Marsh, Esquire
Partner at Marsh Law Firm PLLC
Equinox Building
31 Hudson Yards, 11th Floor
New York, NY 10001

                    **In re:**        **_Katie M. Shipp_**

Dear Mr. Marsh:

        Please be advised that this firm represents Katie M. Shipp in connection with the matters set forth herein.  Please direct any further correspondence on these matters to my attention.

        The purpose of this correspondence is two-fold.  <u>First</u>, it has come to Ms. Shipp's attention that since Ms. Shipp provided you with contractually required notice of her intent to withdraw from the partnership at the Marsh Law Firm ("Firm") on June 7, 2023, you have engaged in a pattern of inappropriate conduct, including, *inter alia*, contacting others to sow dissention and to defame Ms. Shipp's reputation amongst both the employees and contractors of the Firm, as well as the Firm's co-counsel, clients, and vendors. You have repeatedly sent e-mails and text messages to countless individuals describing Ms. Shipp as, among other things, "dishonest," "unprofessional," "unaccountable," and "non-transparent." Based on your 12 years of experience working with Ms. Shipp to build the Firm, and your daily reliance on her expertise and professionalism, you are well aware that the information you are sharing with these individuals is patently false. **Ms. Shipp therefore demands that you, on behalf of yourself and the Firm, immediately cease and desist from engaging in the above-referenced activities.**

        <u>Second</u>, given the aforementioned conduct, you and the Firm are hereby directed to preserve and not destroy copies of all documents, including all electronically stored information (ESI) such as emails and text messages, as described above, including, without limitation, information sent via e-mail and Microsoft Teams. To the extent that you have any of that ESI-related information set to automatically delete, you must hereby discontinue any such automatic deletion of such information.

        Furthermore, and pursuant to Ms. Shipp's rights under her Partnership Agreement with the Firm dated April 2, 2020 ("Agreement"), and the New York Limited Liability Company Law, Ms. Shipp hereby makes a formal request for all Partnership books and records for 2022 and year-to-date for 2023, as defined in Section 2.04 of the Agreement, as well as a complete accounting of the partnership's affairs as per Section 2.06 of the Agreement for the same period. She also requests

EXHIBIT D

James Marsh, Esq.
July 10, 2023
Page 2

a copy of the Firm's federal, state and local income tax or information returns and reports for the three most recent fiscal years (Dec. 31, 2020, Dec. 31, 2021, and Dec. 31, 2022), and the Firm's financial statements (income statement and balance sheet) for the same periods. This information must be provided to our firm's attention on or before July 19, 2023.

Further, Ms. Shipp awaits the required COBRA notice and a letter on Marsh Law Firm letterhead stating that she is no longer employed with the firm. Given that her final day was July 7, 2023, we anticipate receiving this notice and letter prior to August 4, 2023.

It is not Ms. Shipp's desire that this matter evolve into a drawn-out dispute involving litigation. To the contrary, it is Ms. Shipp's sincere hope that we will be able to resolve this matter amicably and promptly. It is my understanding that Ms. Shipp attempted to resolve this matter with you directly in June, without first retaining legal counsel, but that she has not heard back from you or anyone else at the Firm about the payout of her Distributive Share. Be advised that Ms. Shipp expressly reserves all legal and equitable rights and remedies in connection with this matter, including the right to seek injunctive relief and recover monetary damages.

Sincerely yours,

**BLOCK & ASSOCIATES, LLC**
By: Beverly A. Block

Cc:    Jennifer Freeman, Esquire (Via E-Mail to: jenniferfreeman@marsh.law)

6514 Wilkins Avenue • Pittsburgh, PA 15217 • blockpgh.com • Tel. (412) 532-8355

EXHIBIT E

# BLOCK
## & ASSOCIATES

July 24, 2023

***Via Email***
Plum Logic, LLC d/b/a Bookkeeper360.com
c/o: Brandon Cooperman (bcooperman@bookkeeper360.com)
c/o: Terry Rubenfeld (trubenfeld@bookkeeper360.com)

> **Re:    Preservation Obligations for Electronically Stored Information, Records and Documents Regarding Marsh Law Firm, PLLC**

Dear Mr. Rubenfeld and Mr. Cooperman:

This firm represents Katie M. Shipp, a prior member seeking redemption of her membership interest in Marsh Law Firm, PLLC (the "Company"). I am writing to request that Plum Logic, LLC d/b/a Bookkeeper360.com and its affiliated entities (collectively "Bookkeeper360.com") preserve all electronically stored information ("ESI"), documents, and records relevant to potential litigation associated with the financial and tax records of the Company.

To that end, it is of critical importance that you comply with the instructions below. Please note that you may be called to give testimony about your preservation efforts. It is requested that Bookeeper360.com not destroy or delete evidence that may be relevant to an adversary or support claims or defenses in litigation.

**Custodians of Documents, Records, ESI, and Other Relevant Materials:**

At this point in time, we have identified both of you as individuals at Bookkeepers360.com who are likely custodians of relevant ESI, hard-copy documents, and records relevant to this matter, and we therefore direct the preservation of all corporate information related to the potential litigation that are within your possession or control until further notice. This list of documents below, as well as the identity of ESI custodians, may be revised and/or supplemented as Ms. Shipp's investigation into this matter continues.

Please also note that Bookkeeper360.com's preservation obligations extend beyond ESI in the care, possession, or custody of these entities, and includes ESI in the custody of others that are subject to Bookkeeper360.com's direction or control. Accordingly, please notify any of your current or former agent(s), attorney(s), employee(s), custodian(s), or contractor(s) in possession of potentially relevant ESI and documents to preserve such information to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

EXHIBIT E

Plum Logic, LLC d/b/a Bookkeeper360.com's – Litigation Hold
July 24, 2023
Page 2

## Types of ESI, Records and Documents That Must be Retained:

Bookkeeper360.com should retain all ESI, records and documents (electronic or paper) in its possession that may have any connection to the Company, including, but not limited to:

- Financial statements (income statements, financial projections, and balance sheets) and all accounting records for the Company, for the calendar years 2020, 2021, 2022, and 2023;

- All tax returns of the Company, including, but not limited to Forms 1065, Forms 1120-S, PA-1120S, Forms 941, Forms 940, Forms 1099-MISC, and Forms W-2 for the calendar years 2020, 2021, 2022, and 2023; and

- Workpapers, notes, documents, and correspondence regarding any of the above-referenced matters.

## Form of ESI, Records and Documents that Must be Maintained:

Bookkeeper360.com must maintain both hard copies of ESI, records, and documents as well as all e-mail and other ESI. Electronic information includes: word processing documents, spreadsheets, databases, calendars, networks, computer systems (including legacy systems), servers, archives, backup and disaster recovery systems, tapes, disks, drives, cartridges, other storage media, laptops, internet records, personal computers, and other information storage devices. Bookkeeper360.com must retain all copies it has on any storage medium, and cannot overlook sources of data such as portable hard drives, memory cards, "thumb drives," personal digital assistants, mobile telephones, and smartphones.

If custodians of the above-referenced documents use a home computer to perform work on behalf of Bookkeeper360.com, you should also preserve any relevant information from those source(s) as well.

The terms "documents" includes handwritten notes, drafts, tabulations, calculations, summaries, and work papers; it is not limited only to "formal" or "final" documents. Examples of documents (whether in electronic or hard copy) that should be retained include, but are not limited to, letters, correspondence, memoranda, reports, tabulations, calculations, invoices, external and internal literature, notes, schedules, worksheets, plans, minutes, bulletins, brochures, catalogs, notices, press releases, transcripts, calendars, diaries, charts, forecasts, and drafts of all such documents that mention or relate to the above-described litigation. This list is not exhaustive; it is provided by way of example only, and all documents relating in any way to the topics discussed in this memorandum must be preserved.

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you must preserve both forms.

EXHIBIT E

Plum Logic, LLC d/b/a Bookkeeper360.com's – Litigation Hold
July 24, 2023
Page 3

## Suspension of Destruction Policies and Automated Deletion Systems.

You are also requested to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;

- Using data or media wiping, disposal, erasure or encryption utilities or devices;

- Overwriting, erasing, destroying or discarding back up media;

- Re-assigning, re-imaging or disposing of systems, servers, devices or media;

- Running antivirus or other programs effecting wholesale metadata alteration;

- Releasing or purging online storage repositories;

- Using metadata stripper utilities;

- Disabling server or IM logging; and,

- Executing drive or file defragmentation or compression programs.

Kindly confirm your receipt of this letter and further confirm that you have taken the steps outlined in this letter.  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.  If you have any questions related to this matter or the directives contained herein, please do not hesitate to contact me directly.

Yours very truly,

BLOCK & ASSOCIATES, LLC
By:  Beverly A. Block, Esq.

cc:    James Marsh, Esquire (via Email)

6514 Wilkins Avenue • Pittsburgh, PA 15217 • blockpgh.com • Tel. (412) 532-8355

EXHIBIT F

**From:** Terry Rubenfeld <trubenfeld@bookkeeper360.com>
**Sent:** Monday, July 24, 2023 2:58 PM
**To:** Beverly Block <bblock@blockpgh.com>
**Cc:** bcooperman@bookkeeper360.com; jamesmarsh@marsh.law
**Subject:** Re: Litigation Hold Correspondence 7.24.23

To Beverly Block

Confirmed receipt of document and request

Terry

On Mon, Jul 24, 2023 at 10:31 AM Beverly Block <bblock@blockpgh.com> wrote:

  Dear Mr. Rubenfeld and Mr. Cooperman:

EXHIBIT F

Please see the attached letter for your immediate attention. Please contact me with any questions.

Very truly yours,

Beverly A. Block, Esquire

Block & Associates, LLC

6514 Wilkins Avenue

Pittsburgh, PA 15217

Office: (412) 532-8355

Mobile: (412) 527-5858

Email: bblock@blockpgh.com

Visit us: www.blockpgh.com



**CONFIDENTIALITY:** This e-mail (and any attachments) may contain confidential and privileged material for the sole use of the intended recipient. Any review or distribution by others, without express permission, is strictly prohibited. If you are not the intended recipient please contact the sender and delete all copies.

GO GREEN: Kindly print this email only if necessary. Thank you for helping Block & Associates, LLC be environmentally responsible.

--



**Terry Rubenfeld, CPA**
Chief Operating Officer
(631) 807-5161

EXHIBIT F

bookkeeper360.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the within **Complaint** has been electronically filed with the Court and served upon the following this 19th day of October via E-mail and/or by United States Certified Mail, Return Receipt, postage prepaid to the following:

James Marsh
530 W. 30th Street, Unit 5F
New York, NY 10001

The Marsh Law Firm PLLC
31 Hudson Yards, 11th Floor
New York, NY 10001

Beverly A. Block, Esquire
Pa I.D. No. 93406

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Beverly A. Block, Esquire</u>

Signature: <u>[signature]</u>

Name: <u>Beverly A. Block, Esquire</u>

Attorney No. (if applicable): <u>93406</u>

**Exhibit B**
**[Certified Mail Receipt]**

# USPS Tracking®

FAQs ›

**Remove** ✕

Tracking Number:

## 70221670000201455259

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 2:22 pm on October 23, 2023 in NEW YORK, NY 10001.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

Feedback

● **Delivered**
**Delivered, Front Desk/Reception/Mail Room**
NEW YORK, NY 10001
October 23, 2023, 2:22 pm

● **In Transit to Next Facility**
October 22, 2023

● **Departed USPS Regional Destination Facility**
NEW YORK NY DISTRIBUTION CENTER
October 21, 2023, 11:18 pm

● **Arrived at USPS Regional Destination Facility**
NEW YORK NY DISTRIBUTION CENTER
October 21, 2023, 11:49 am

● **Departed USPS Regional Facility**
PITTSBURGH PA DISTRIBUTION CENTER
October 20, 2023, 7:59 pm

● **Arrived at USPS Regional Origin Facility**

PITTSBURGH PA DISTRIBUTION CENTER
October 20, 2023, 12:09 am

● **Departed Post Office**
PITTSBURGH, PA 15217
October 19, 2023, 6:34 pm

● **Departed USPS Facility**
PITTSBURGH, PA 15217
October 19, 2023, 6:25 pm

● **USPS in possession of item**
PITTSBURGH, PA 15217
October 19, 2023, 4:29 pm

● **Hide Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

---

Text & Email Updates                                                    ⌄

---

USPS Tracking Plus®                                                      ⌄

---

Product Information                                                      ⌄

---

See Less ⌃

Track Another Package

| Enter tracking or barcode numbers |
|---|

# Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the within **Motion to Assign Case to the Commerce and Complex Litigation Center** has been served upon the following this 24th day of October 2023 by United States First Class Mail, postage prepaid:

The Marsh Law Firm
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

James R. Marsh
530 W. 30th Street, Unit 5F
New York, NY 10001

With Courtesy Copy to:
Lee Auerbach, Esquire
81 Main Street, Suite 307
White Plains, New York 10601
Via E-Mail: auerbach@auerbachlaw.com

_____
Beverly A. Block, Esquire
Pa ID No. 93406

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Beverly A. Block, Esquire

Signature:

Name: Beverly A. Block, Esquire

Attorney No. (if applicable): 93406

THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

KATIE M. SHIPP, individually and
derivatively on behalf of MARSH LAW
FIRM PLLC,

       Plaintiff,

v.

JAMES R. MARSH,

       Defendant

  -and-

MARSH LAW FIRM PLLC,

       Nominal Defendant.

CIVIL DIVISION

Case Number: GD-23-011019

## ORDER

    AND NOW, TO-WIT, this 30th day of October, 2023, upon review and consideration of Plaintiff's Motion to Assign Case to the Commerce and Complex Litigation Center, it is hereby ORDERED, ADJUDGED and DECREED that said Motion is GRANTED and this action is assigned to the Commerce and Complex Litigation Center.

                       BY THE COURT:

                  By Consent   Christine Ward  J.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| KATIE M. SHIPP, individually and Derivatively on behalf of MARSH LAW FIRM, PLLC, | CIVIL DIVISION |
| | Case No. GD-23-011019 |
| Plaintiff, | **PRAECIPE FOR ENTRY OF APPEARANCE** |
| vs. | |
| JAMES R. MARSH, | Filed on behalf of Defendant and and Nominal Defendant: JAMES R. MARSH and MARSH LAW FIRM PLLC |
| Defendant, | |
| -and- | |
| MARSH LAW FIRM PLLC, | |
| Nominal Defendant. | |
| | Counsel of Record for this Party: |
| | DAVID V. WEICHT, ESQUIRE PA ID No. 65191 |
| | JESSICA K. ALBERT, ESQUIRE PA ID No. 309666 |
| | LEECH TISHMAN FUSCALDO & LAMPL, LLC 525 William Penn Place, 28th Floor Pittsburgh, PA 15219 412-261-1600 (Main) (412) 227-5551 (Facsimile) ***dweicht@leechtishman.com*** |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. GD-23-011019 |
| | ) |
| JAMES R. MARSH, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| -and- | ) |
| | ) |
| MARSH LAW FIRM PLLC, | ) |
| | ) |
| Nominal Defendant. | ) |

## PRAECIPE FOR ENTRY OF APPEARANCE

TO:    ALLEGHENY COUNTY, DEPARTMENT OF COURT RECORDS:

Kindly enter the appearance of David V. Weicht, Esquire, and the law firm of Leech Tishman Fuscaldo & Lampl, LLC on behalf of Defendant, James R. Marsh, and Nominal Defendant, Marsh Law Firm PLLC, regarding the above-captioned matter.

Respectfully submitted:

LEECH TISHMAN FUSCALDO & LAMPL, LLC


By:*/s/ David V. Weicht*
David V. Weicht, Esquire
PA ID No. 65191

525 William Penn Place, 28th Floor
Pittsburgh, PA  15219
412-261-1600 (Main)
412-227-5551 (Facsimile)
***dweicht@leechtishman.com***

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Defendant and Nominal Defendant</u>

Signature: <u> */s/ David V. Weicht*</u>

Name: <u>David V. Weicht</u>

Attorney No. (if applicable): <u>65191</u>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this **1st** day of **November**, a true and correct copy of the foregoing

***PRAECIPE FOR ENTRY OF APPEARANCE*** was served via email and/or regular, first-class

mail, postage prepaid upon the following:

Beverly A. Block, Esquire
George C. Thompson, Esquire
*BLOCK & ASSOCIATES, LLC*
6514 Wilkins Avenue
Pittsburgh, PA  15217
***bblock@blockpgh.com***
*Counsel for Plaintiff*


LEECH TISHMAN FUSCALDO & LAMPL, LLC


By:*/s/ David V. Weicht*
     David V. Weicht

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

KATIE M. SHIPP, individually and
Derivatively on behalf of MARSH LAW
FIRM, PLLC,

      Plaintiff,

vs.

JAMES R. MARSH,

      Defendant,

  -and-

MARSH LAW FIRM PLLC,

      Nominal Defendant.

CIVIL DIVISION

Case No. GD-23-011019

**PRAECIPE FOR ENTRY
OF APPEARANCE**

Filed on behalf of Defendant and
and Nominal Defendant:
JAMES R. MARSH and
MARSH LAW FIRM PLLC

Counsel of Record for this Party:

DAVID V. WEICHT, ESQUIRE
PA ID No. 65191

JESSICA K. ALBERT, ESQUIRE
PA ID No. 309666

LEECH TISHMAN FUSCALDO &
LAMPL, LLC
525 William Penn Place, 28th Floor
Pittsburgh, PA  15219
412-261-1600 (Main)
(412) 227-5551 (Facsimile)
***dweicht@leechtishman.com***

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| KATIE M. SHIPP, individually and derivatively on behalf of MARSH LAW FIRM PLLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. GD-23-011019 |
| JAMES R. MARSH, | ) ) | |
| Defendant, | ) ) | |
| -and- | ) ) | |
| MARSH LAW FIRM PLLC, | ) ) | |
| Nominal Defendant. | ) | |

## <u>PRAECIPE FOR ENTRY OF APPEARANCE</u>

TO:    ALLEGHENY COUNTY, DEPARTMENT OF COURT RECORDS:

Kindly enter the appearance of Jessica K. Albert, Esquire, and the law firm of Leech Tishman Fuscaldo & Lampl, LLC on behalf of Defendant, James R. Marsh, and Nominal Defendant, Marsh Law Firm PLLC, regarding the above-captioned matter.

Respectfully submitted:

LEECH TISHMAN FUSCALDO & LAMPL, LLC

By:*/s/ Jessica K. Albert*
    Jessica K. Albert, Esquire
    PA ID No. 309666

    525 William Penn Place, 28th Floor
    Pittsburgh, PA  15219
    412-261-1600 (Main)
    412-227-5551 (Facsimile)
    ***jalbert@leechtishman.com***

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Defendant and Nominal Defendant</u>

Signature: <u>/s/ Jessica K. Albert</u>

Name: <u>Jessica K. Albert</u>

Attorney No. (if applicable): <u>309666</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **1st** day of **November**, a true and correct copy of the foregoing

***PRAECIPE FOR ENTRY OF APPEARANCE*** was served via email and/or regular, first-class

mail, postage prepaid upon the following:

Beverly A. Block, Esquire
George C. Thompson, Esquire
*BLOCK & ASSOCIATES, LLC*
6514 Wilkins Avenue
Pittsburgh, PA  15217
***bblock@blockpgh.com***
*Counsel for Plaintiff*

LEECH TISHMAN FUSCALDO & LAMPL, LLC

By: */s/ Jessica K. Albert*
     Jessica K. Albert