IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| KATIE M. SHIPP, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF MARSH LAW FIRM PLLC;<br><br>Plaintiff,<br><br>vs.<br><br>JAMES R. MARSH,  MARSH LAW FIRM PLLC, NOMINAL DEFENDANT;<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    2:23-CV-01995-MJH |

OPINION

Plaintiff, Katie M. Shipp, brings the within action against Defendants, James R. Marsh and Marsh Law Firm, PLLC, for Breach of Contract-specific performance (Count I), Breach of Fiduciary Duty (Count II), Accounting (Count III), Unjust Enrichment (Count IV), and Appointment of a Custodian (Count V) arising from her alleged membership in the Marsh Law Firm.  Ms. Shipp filed her Complaint (ECF No. 1-2) in the Allegheny County Court of Common Pleas.  Defendants filed a Notice of Removal asserting this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1).  Ms. Shipp has moved to remand this case back to Allegheny County.  (ECF No. 2).  Defendants have moved to transfer this case to the United States District Court for the Southern District of New York.  (ECF No. 10).  These matters are now ripe of disposition.

Following consideration of Defendants' Notice of Removal (ECF No. 1), Ms. Shipp's Complaint (ECF No. 1-2), Ms. Shipp's Motion for Remand (ECF No. 2), the respective responses and briefs (ECF Nos. 3, 7, 8, and 9), and for the following reasons, Ms. Shipp's Motion for Remand will be granted.   This matter will be remanded back to the Allegheny Court

of Common Pleas. Because the Court's remand is based upon a want of federal jurisdiction, the Court is without authority to transfer this matter to another federal district court. Accordingly, Defendant's Motion to Transfer to another federal district court will be denied as moot.[1]

I. Background

A. Complaint

Ms. Shipp alleges this matter involves a dispute between two law partners, James Marsh, and Katie Shipp, the only members of a limited liability company, The Marsh Law Firm. (ECF No. 1-2 at ¶ 1). Ms. Ship avers that Mr. Marsh refuses to provide Ms. Shipp with information, to which she is legally entitled, in a deliberate attempt to deprive Ms. Shipp of contractually guaranteed information upon her separation from the Firm. *Id*. at ¶ 2. She alleges that Mr. Marsh's conduct has harmed and continues to harm not only Ms. Shipp, but also the Firm. *Id*. at ¶ 2.

Mr. Shipp alleges that, on April 2, 2020, she and Mr. Marsh entered into a "Partnership Agreement.[2]" (hereinafter "Operating Agreement"). *Id*. at ¶ 16. She further avers that the Operating Agreement provided for compensation, profit/loss sharing, distribution interests, and 401(k) contributions. *Id*. at ¶¶ 22-28.

On June 7, 2023, pursuant to Section 4.01 of the Operating Agreement, Ms. Shipp provided Mr. Marsh with her 30-day notice of intent to withdraw from the Firm. *Id*. at ¶¶ 36-37. Ms. Shipp avers she intended her resignation from the Firm to be effective thirty (30) days later,

---

[1] Because it lacks jurisdiction, the Court provides no commentary or analysis here relative to the merits of transferring this matter to another venue that would otherwise preclude the matter being re-raised in a court of competent jurisdiction.

[2] While the agreement is designated as a Partnership Agreement, the Firm is a professional limited liability company, not a partnership, and Ms. Shipp and Mr. Marsh are designated herein as members of the Firm.

on July 7, 2023. *Id*. at ¶ 38. On June 13, 2023, pursuant to Sections 2.01, 2.04, and 2.06 of the Partnership Agreement, Ms. Shipp requested that Mr. Marsh provide her with updated information on the Firm's five-year financial projections. *Id*. at ¶ 45.  On June 28, 2023, Ms. Shipp renewed her June 13, 2023 demand that she be provided with an accounting of the Firm's financial records. *Id*. at ¶ 49.  Ms. Shipp avers that, immediately following her second request, Mr. Marsh terminated her access to the Firm's computer systems. *Id*. at ¶ 50.  At the time Ms. Shipp filed this lawsuit, she had yet to receive the requested information.  *Id*. at ¶ 61.

Ms. Shipp has further alleged that Mr. Marsh has violated Section 3.02 of the Operating Agreement by making numerous payments in excess of $10,000 without Ms. Shipp's express consent. *Id*. at ¶ 29.  She further avers that Mr. Marsh improperly transferred $700,000.00 from the Firm's operating account to his personal account. *Id*. at ¶ 30.

In her Complaint, Ms. Shipp alleges that she is a resident of Pennsylvania, Mr. Marsh is a resident of New York, and that the Firm, a professional limited liability company, has only two members, Ms. Shipp and Mr. Marsh. *Id*. at ¶¶ 4-7.  Thus, she maintains the firm has residency in both Pennsylvania and New York.

      B.  Removal allegations

In their Notice of Removal, Defendants assert that Mr. Marsh is the sole remaining member of the Firm and that Ms. Shipp is a former member. (ECF No. 1 at ¶ 1).  Defendants assert that Ms. Shipp's withdrawal was effective on July 7, 2023.  *Id*. Accordingly, as of the time the Complaint was filed, Defendants maintains that Shipp was no longer a member of the Firm and had no standing to assert derivative claims against the Firm.  *Id*.  Accordingly, Defendants maintain that complete diversity exists between Ms. Shipp and Mr. Marsh.  *Id*.

II. Relevant Standards

 A. Remand

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal district court when the claims fall within the federal court's original jurisdiction. See 28 U.S.C. § 1441(a).  A plaintiff may challenge removal for lack of jurisdiction by moving to remand the matter to state court. *See id*. § 1447(c). Such motions may be filed at any time before final judgment is entered. *Id*. If the district court indeed lacks subject matter jurisdiction, it must remand to the state court from which the action was removed. *Id*. As the party asserting jurisdiction, defendants bear the burden of proving that the matter is properly before the federal court. *See Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted); *Steel Valley Auth. v. Union Switch & Signal Div*., 809 F.2d 1006, 1010 (3d Cir. 1987) (same).

 B. Diversity Jurisdiction and Limited Liability Companies (LLCs)

District courts may exercise jurisdiction over cases, raising claims exclusively under state law, if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a). "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he citizenship of an LLC [or other unincorporated entity] is determined by the citizenship of its members." *Zambelli*, 592 F.3d at 420.

III.     Discussion

In her Motion for Remand, Ms. Shipp contends that, because she is still a member of the Firm, both she and the Firm are citizens of Pennsylvania; therefore, diversity jurisdiction does not exist.  Defendants maintain that Ms. Shipp is no longer a member of the Firm pursuant to the terms of the Operating Agreement; thus, diversity of citizenship exists as between Ms. Shipp, Mr. Marsh, and the Firm.  In the alternative, Defendants argue that the Firm is a nominal defendant that should be disregarded, and jurisdiction should rest upon only the citizenship of the real parties to the dispute, Ms. Shipp and Mr. Marsh.

A determination of Ms. Shipp's status as a member of the Firm will inform both arguments in determining diversity.   If Ms. Shipp is not considered a member, then the Defendants, Mr. Marsh and the Firm are citizens of New York, and complete diversity is present.  However, if Ms. Shipp is considered a member, then the Firm is a citizen of both Pennsylvania and New York.

A.     Ms. Shipp's Membership Status

Ms. Shipp maintains that, while she provided Mr. Marsh and the Firm with notice of her intention to withdraw, the terms of the Operating Agreement establish that this notice only triggered the commencement of the withdrawal process.  Ms. Shipp further contends that, per the terms of the Operating Agreement, withdrawal would not be completed for 60 months and only after Ms. Shipp actually received full payment for her interest in the Firm.   Therefore, Ms. Shipp contends that she remains a member because she filed this lawsuit before the expiration of 60 months.  Defendants argue that Ms. Shipp's withdrawal was effectuated on the thirtieth day following her notice, July 7, 2023.  Defendants further contend that Ms. Shipp's interpretation of

Article 4 of the Operating Agreement, that her interest and membership continue until 60 months following her withdrawal, contravenes the language of the Operating Agreement.

New York's Limited Liability Company Law provides for the withdrawal of a member as follows:

> (a) A member may withdraw as a member of a limited liability company only at the time or upon the happening of events specified in the operating agreement and in accordance with the operating agreement. Notwithstanding anything to the contrary under applicable law, unless an operating agreement provides otherwise, a member may not withdraw from a limited liability company prior to the dissolution and winding up of the limited liability company. Notwithstanding anything to the contrary under applicable law, an operating agreement may provide that a membership interest may not be assigned prior to the dissolution and winding up of the limited liability company.

NY Limit Liab Co § 606(a) (McKinney). Thus, pursuant to Section 606(a), the Court will examine the Firm's Operating Agreement, which provides:

> **ARTICLE 4.  WITHDRAWAL, INVOLUNTARY DISCHARGE, DEATH, OR DISSOLUTION**
>
> **4.01 Withdrawal of Partner.** Any Partner may withdraw from the Partnership by giving the Partner(s) 30 days written notice of their intention to do so.
>
> **4.02 Withdrawal, Discharge, or Death of a Partner.** Upon the withdrawal, involuntary discharge, or death of a Partner, the remaining Partner(s) may continue the Partnership business or transfer matters currently in existence as evidenced by signed retainer agreements on the date of the Partner's withdrawal, involuntary discharge, or death, subject to the following terms and conditions which shall be binding on any subsequent transferees to the extent permitted by New York law and attorney ethics. The remaining Partner(s) or transferees shall pay to the withdrawing or involuntarily discharged Partner, or the deceased Partner's Personal Representative or Distributee listed in Appendix I, as provided in paragraph 4.03 of this agreement.
>
> **4.03 Value of Partnership Interest.** Upon the withdrawal, involuntary discharge, or death of a Partner, the Partnership shall pay to the withdrawing or involuntarily discharged Partner, or the deceased Partner's Personal Representative or Distributee, the Partner's distributive share of any net profits earned by the Partnership on matters currently in existence as evidenced by signed retainer agreements on the date of the Partner's withdrawal, involuntary discharge, or death. The distributive share shall be paid out over time as matters resolve as

> follows: 100% for the first 12 months, 80% for the second 12 months, 60% for the third 12 months, 40% for the fourth 12 months, and 20% for the fifth 12 months. After 60 months, the withdrawing, involuntarily discharged, or deceased Partner's interest shall forever terminate.
>
> **4.04 Dissolution.** Upon dissolution of the Partnership, all Partnership assets, but excluding any files or records pertaining to the affairs of its clients, shall be liquidated and the proceeds distributed in the manner specified under New York law.

(ECF No. 1-2 at pp. 28-29).

"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Jacobs v. Cartalemi,* 156 A.D.3d 635, 639, 66 N.Y.S.3d 503, 508 (N.Y. App. Div. 2017) (citations omitted) "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id*. "[A] contract should be 'read as a whole; ... and if possible[,] it will be so interpreted as to give effect to its general purpose.'" *Id*. "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* Under ordinary contract construction rules, the rules of English grammar apply. *In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 322 (S.D.N.Y. 2008). A contract's use of the present tense and past tense is unambiguous. *Commercial Tenant Servs., Inc. v. Penske Bus. Media, LLC*, 20-CV-9756 (SHS), 2022 WL 4292971, at *4 (S.D.N.Y. Sept. 16, 2022)

Here, the Operating Agreement provides for a minimum 30-day notice provision for members to signify their intent to withdraw. However, the Operating Agreement does not enumerate any other specific procedures beyond a member's signal of an *inten*t to withdraw. Other provisions speak to events following "withdrawal," but no indication on what event completes the act of withdrawal. Instead, the Operating Agreement describes "withdrawing partners" using the present participle, "withdrawing," when describing payments of the

member's interest in the Firm, including a 60-month timeline before interest termination. Article 4 of the Operating Agreement could have used the past participle, "withdrawn," in this context, but instead used a present and active word, "withdrawing" which indicates a plain and unambiguous meaning that those actions, associated with withdrawal, were ongoing and incomplete. In the least, Article 4 provides a "withdrawing partner" payment of a distributive share. Ms. Shipp's Complaint indicates that no such payments have occurred; and thus, this Court can only conclude that, under the plain meaning of the Operating Agreement, she is/was withdrawing from the Firm, but her membership rights remained until all antecedent events were completed. Further, Defendants, who maintain the jurisdictional burden, have not produced or asserted evidence that any events beyond the Complaint occurred that would support that Ms. Shipp was, past tense, withdrawn or otherwise completed the act of withdrawal beyond her intent to withdraw. Instead, the plain language supports that, at the time Ms. Shipp filed her Complaint, she had a membership interest in the Firm.

In addition to the Court's above conclusion as to the plain language interpretation, under New York law, "a contract should not be interpreted to produce an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties" *Cole v. Macklowe,* 99 A.D.3d 595, 596, 953 N.Y.S.2d 21 (1st Dept.2012). Any ambiguities in an operating agreement for a Limited Liability Company must be construed against the drafter. *KSI Rockville, LLC v. Eichengrun*, 305 A.D.2d 681, 760 N.Y.S.2d 520 (N.Y. App. Div. 2003).

Here, on June 7, 2023, Ms. Shipp provided her notice of intent to withdraw from the Firm to be effective thirty (30) days later, on July 7, 2023. But, before the thirty days elapsed, on June 13, 2023, pursuant to Sections 2.01, 2.04, and 2.06 of the Partnership Agreement, Ms. Shipp requested that Mr. Marsh provide her with updated financials and information on the Firm's five-

year financial projections. *Id*. at ¶ 45.  On June 28, 2023, Ms. Shipp renewed her request for the Firm's financial records, but shortly thereafter, she alleges Mr. Marsh terminated her access to the Firm's computer systems.  At the time Ms. Shipp filed this lawsuit, she alleges she has yet to receive the requested information.

Article 4 of the Operating Agreement, by virtue of its heading and substance, governs membership withdrawal.  Under Section 4.03, part of that withdrawal process includes distributions to withdrawing members.  Ms. Shipp, within the withdrawal notice period, requested financial information pertinent to those distributions, but she alleges her efforts were stymied.  According to the plain language of the Operating Agreement, she, as a member, was entitled to certain financial information under Article 2, which would facilitate any final withdrawal process under Article 4.  Without the meaningful opportunity to participate and investigate those things pertinent to withdrawal, Defendants' interpretation terminates Ms. Shipp's membership only upon the expiration of 30 days. However, the crux of Ms. Shipp's lawsuit began during the undisputed period of her membership.  Under principles of contract interpretation, which abhors an absurd result, the Court cannot sustain Defendants' interpretation of the Operating Agreement.   Given these particular circumstances, where disagreements occurred before the expiration notice period, it would be absurd to have the arbitrary 30-day notice period trump Ms. Shipp's contractual rights as a member.

Furthermore, the Operating Agreement lacks any unambiguous provision for how or when member withdrawal occurs after notice of intent to withdraw is submitted.  Thus, the Court must construe ambiguities within the Operating Agreement against the alleged drafter, Mr. Marsh, and reach the conclusion that Ms. Shipp's membership withdrawal was not finalized as of the 30th day following her notice of intent to withdraw.  (ECF No. 1-2 at ¶ 15).  The Court

concludes, under these circumstances, that, where her membership rights were hampered, and where she did not communicate or effectuate her actual withdrawal beyond giving notice of intent, and where she has timely sought redress for the same, Ms. Shipp maintains membership rights in the Firm.

B. Nominal Defendant

Having concluded that Ms. Shipp maintains membership rights in the Firm, the Court now turns to Defendants' alternative argument that the Firm's citizenship should be disregarded; and thus, the sole remaining parties, Ms. Shipp and Mr. Marsh, would be diverse. In her Motion for Remand, Ms. Shipp maintains that limited liability companies, like the Firm, are not nominal parties in derivative lawsuits. Specifically, Ms. Shipp asserts that she has alleged derivative claims on behalf of the Firm, based upon conduct by Mr. Marsh, which has harmed the Firm. Therefore, she asserts that she is seeking relief, in part, on the Firm's behalf.

Defendants contend that the Firm should be disregarded because this matter primarily concerns Ms. Shipp's direct claims for breach of contract and not derivative claims on behalf of the Firm.

Under New York law, members of a limited liability company (LLC) may bring derivative suits on the LLC's behalf by naming the LLC in the suit. *See Tzolis v. Wolff*, 10 N.Y.3d 100, 102, 884 N.E.2d 1005, 1005 (2008). "'Whether a claim is derivative or direct is a question of state law.'" *Seibel v. Frederick*, No. 20-CV-2603 (PAE), 2020 WL 1847792, at *3 (S.D.N.Y. Apr. 13, 2020) (quoting *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 645 (S.D.N.Y. 2008)). The Operating Agreement provides that New York law should control. (ECF No. 1-2 at p. 80).

10

"A managing member of an LLC owes a fiduciary duty to the LLC." *McKinnon Doxsee Agency, Inc. v. Gallina*, 187 A.D.3d 733, 132 N.Y.S.3d 144, 148 (2d Dep't 2020). That fiduciary duty consists of several obligations, including "the duty of care [and] duty of loyalty." *Rennaker Co. Consulting, Inc. v. TLM Grp.*, LLC, 2017 WL 2240235, at *4 (S.D.N.Y. Mar. 29, 2017) (citing *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 438 (S.D.N.Y. 2010)); see also N.Y. Ltd. Liab. Co. Law § 409(a) ("A manager shall perform his or her duties as a manager ... in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances."). Claims based "allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the [LLC] only, for which a [member] may sue derivatively but not individually." *Abrams v. Donati*, 66 N.Y.2d 951, 953, 489 N.E.2d 751, 751 (1985). Under New York law, causes of action based on allegations that limited liability company (LLC) managers breached their fiduciary duties by diverting funds to themselves belonged to LLC, rather than LLC member. *Weidberg v. Barnett*, 752 F.Supp.2d 301, 308 (E.D.N.Y. 2010)

Here, for purposes of her remand motion, Ms. Shipp has sufficiently alleged derivative claims that Mr. Marsh has harmed the LLC. Specifically, she alleges claims that Mr. Marsh, the Firms' managing member, breached his fiduciary duty to the Firm by

a. negligently or intentionally fail[ing] to act in good faith and solely for the benefit of [the Firm] in all matters for which he was employed and elected." (ECF No. 1-2 at ¶ 74

b. Taking, using, or misusing company assets, funds, resources, distributions, and benefits.

c. Failing to properly account to Plaintiff and failing or refusing to provide to Plaintiff complete information concerning [the Firm's] affairs.

d. Failing to properly conserve the property of [the Firm].

    e.   Failing to properly protect the interests of Plaintiff in [the Firm].

    f.   Transferring $700,000.00 of [the Firm] funds to his personal bank account.

    g.   Expending funds in excess of $10,000.00 without Shipp's prior written approval.

(ECF No. 1-2 at ¶ 74). Such claims and allegations, when taken as true at the pleading stage, are derivative in nature, because they implicate direct harm to the Firm rather than solely harm to Ms. Shipp. Therefore, the Firm is a proper party in this case. Because Ms. Shipp maintains membership rights in the Firm, the Firm's citizenship is both Pennsylvania and New York. And, because Ms. Shipp is a citizen of Pennsylvania and the Firm is a properly named defendant and a citizen of both Pennsylvania and New York, diversity is lacking. Thus, this Court cannot maintain subject matter jurisdiction under the diversity statute.

    Accordingly, Ms. Shipp's Motion for Remand will be granted. This matter will be remanded to the Allegheny County Court of Common Pleas. Defendants' Motion to Transfer to another federal district court will be denied as moot.

    A separate order will follow.

    DATED this 15th day of March, 2024.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge